## 75178. HAYES CONSTRUCTION COMPANY v. THOMPSON.

(361 SE2d 865)

DEEN, Presiding Judge.

The appellee, Gerald Thompson, d/b/a Thompson Electric Company, was an electrical subcontractor who contracted with the appellant, Hayes Construction Company, to perform the electrical work in the construction of a retirement complex financed by the United States Department of Housing and Urban Development. Thompson commenced this action to recover $20,500 due under the subcontract that Hayes had retained to cover the deficiency in the amount of wages that Thompson should have paid his employees under the Davis-Bacon Act, 40 USCA § 276a et seq. This appeal follows from a jury verdict awarding Thompson $20,500, plus $11,000 attorney fees because of Hayes's bad faith.

Hayes submitted its bid for the construction project to St. Mark's Towers, Inc., on September 8, 1980. Hayes' bid was partially based on Thompson's bid as electrical subcontractor to do the electrical work for $205,000; it is undisputed that Thompson's bid was based on paying his employees their normal, local wages. Hayes entered the contract with St. Mark's on September 24, 1980, at which time Hayes first realized that Davis-Bacon wages would have to be paid since the project was financed by H.U.D. (Under the Davis-Bacon Act, employees were to be paid not less than the current wage determination by the Secretary of Labor, which provided for electrician's wages almost double of those estimated and paid by Thompson.)

The evidence is in conflict as to what transpired when Hayes' president, Denis Palmerin, informed Thompson of the wage problem. Thompson claimed that Palmerin agreed that Hayes would be responsible for the deficiency, should its appeal of the wage determination to the Secretary of Labor fail. Palmerin denied making such an agreement and claimed that Thompson had proceeded to enter the subcontract willing to risk the outcome of Hayes's appeal. In any event, on October 10, 1980, Hayes and Thompson entered the subcontract.

This subcontract was silent as to any requirement to pay Davis-Bacon wages, but it did provide that "[t]he contract documents for this subcontract consist of this agreement and any exhibits attached hereto, the agreement between the owner and the contractor, the conditions of the contract between the owner and the contractor (general,

supplementary and other conditions) . . ." The supplementary conditions to the contract between Hayes and St. Mark's (1) required payment of Davis-Bacon wages; (2) directed that the supplementary conditions were to be inserted in any subcontracts entered by the contractor; (3) specified that the contractor was not relieved of responsibility for compliance with the supplementary conditions; and (4) provided that the owner may withhold payment to the contractor until the contractor established compliance with these conditions.

The project was completed in May 1982. Hayes' appeal of the wage determination was ultimately unsuccessful, with Hayes dismissing its petition on July 12, 1982. Hayes received final payment from St. Mark's on June 30, 1983, after satisfying the wage deficiency. Under the subcontract between Hayes and Thompson, Thompson was due payment of the $20,500 retainage within 30 days of final payment to Hayes. Thompson commenced this action when Hayes refused to pay that retainage. *Held*:

1. Hayes primarily contends that Thompson never should have been allowed to testify about any agreement by Hayes to be responsible for the wage deficiency. At trial and on appeal, Hayes and Thompson thrust and parry, with much bluster and sting, about the parol evidence rule, ambiguity in contracts, conditions precedent, collateral agreements, merger, and waiver. The briefs of the parties are veritable blunderbusses of contract law. Cautiously stepping over the verbal carnage, we conclude that the testimony was properly admitted.

Under OCGA § 24-6-1, "[p]arol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument." Thompson's testimony about Hayes' agreement to be responsible for the wage deficiency should its appeal of the wage determination fail, however, did not contradict any of the terms of the written contract. The written subcontract between Hayes and Thompson was silent as to the issue of Davis-Bacon wages, but the supplementary conditions to the contract between Hayes and St. Mark's, which were incorporated in the subcontract, did address the matter. However, those supplementary conditions placed the onus on Hayes of ensuring that Davis-Bacon wages were paid and clearly held Hayes, and not the subcontractor, responsible for any noncompliance. Accordingly, Thompson's testimony was entirely consistent with the written contract between Hayes and Thompson.

2. The jury awarded Thompson $11,000 for attorney fees because of bad faith on the part of Hayes. Hayes contends that the trial court erred in submitting the claim for attorney fees to the jury, because there was no evidence of bad faith and because Thompson failed to prove the value of the attorney's services.

OCGA § 13-6-11 allows recovery of attorney fees only when "the

defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense . . ." Bad faith authorizing an award of attorney fees in a contract action must relate to the conduct of entering the contract or to the transaction and dealings out of which the cause of action arose, which includes not only the negotiations and formulation of the contract but also performance of the contractual provisions. *Edwards-Warren Tire Co. v. Coble*, 102 Ga. App. 106, 113-114 (115 SE2d 852) (1960). Construing the evidence in the light most favorable to the verdict, Hayes agreed to be responsible for the wage deficiency from the beginning, as demonstrated by its dealings with St. Mark's and H.U.D., until close to the time of closing and final payment in June 1983. In short, Hayes' refusal to pay Thompson the $20,500 retainage, as final performance under the subcontract, was contrary to the position it had maintained for over two years. Under these circumstances, the evidence supported a finding of bad faith.

In proving the value of an attorney's services, "[g]enerally, a party will proffer the opinion testimony of his present counsel as well as that of other attorneys in an effort to show what constitutes a reasonable attorney fee in light of the litigation history of the case." *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815, 817 (285 SE2d 203) (1981). In this case, Thompson proffered the testimony of another attorney who had practiced as a trial attorney in the same area since 1972. Based on his review of counsel's files and research, consideration of the issues and nature of the case, discussion of the case with counsel, and his knowledge of the customary fees and counsel's legal abilities, this attorney was of the opinion that the conservative value of the legal services rendered by Thompson's attorney was $12,375 (165 hours at $75 per hour). This evidence sufficiently supported the jury award of $11,000.

3. Hayes' remaining enumerations of error, regarding the instructions to the jury, are without merit. The requested charge on antecedent oral negotiations merging into the written contract would be misleading and inconsistent with the above holding that the evidence of the oral negotiations was admissible. The requested charge that one who signs a written contract without reading it, is chargeable with knowledge of its contents, was superfluous.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED OCTOBER 8, 1987.

*Thomas J. Lee*, for appellant.
*James R. Tuten, Jr., John R. Ferrelle*, for appellee.