## A93A0143. CONDON et al. v. KUNSE et al.

(432 SE2d 266)

BLACKBURN, Judge.

On March 14, 1991, George and Eileen Condon purchased a farm in Harris County that was used primarily for raising cattle. In September 1991, after discovering that the fescue grass on the farm was infested with an endophyte fungus, the Condons commenced this action against Ralph and Narice Kunse as the sellers of the property, and Christine Hargett and Hargett Realty, Inc., as the real estate agent and realty company who represented the sellers, alleging fraud and violations of the Fair Business Practices Act. The trial court granted summary judgment for all the defendants, and this appeal followed.

The record shows that from 1979 until 1985, the Kunses operated their own cattle farm on the property, and from 1986 to 1991 leased the farm to others to raise their cattle. The farm's pastures were composed mostly of tall fescue grass, which is the predominant grazing grass in the United States. Over 90 percent of the fescue fields in the country are infected with an endophyte fungus which can cause various adverse effects upon cattle production, such as decreases in weight gain, losses in calf production, reduced milk production, fat necrosis, tails falling off, and hooves falling off. From 1931 until 1983, virtually all commercially available fescue seed was infected with the fungus. Fungus-free fescue became available in 1983, but most of the country's fescue fields remain heavily infected with the endophyte fungus.

The Kunses first began marketing the farm for sale in 1989, and entered an oral listing agreement with Christine Hargett and Hargett Realty, Inc. In March 1989, the Kunses entered into a contract to sell the farm to another couple who planned to use the property to raise championship horses. Prior to the closing of the sale, the couple had three samples of the fescue grass on the farm tested by the Fescue Diagnostic Laboratory at Auburn University, which revealed fungus infestation rates of 88 percent, 90 percent, and 100 percent. Despite the Kunses' assurances that they had never experienced any problems associated with the infected fescue, the buyers were concerned about the possible adverse effects on pregnant mares and demanded that the infected fescue be replaced. The Kunses refused to do so, and the contract ultimately was rescinded. None of the appellees revealed this report regarding the fescue infestation to the appellants prior to the sale.

Before the closing of the sale, the appellants did not have the farm's fescue grass tested, and did not inquire with any of the individuals who had leased the farm since 1986 to raise cattle or who had harvested the hay crops. Soon after the appellants took possession of

the farm and placed a herd of cattle on it, several cows became ill. The appellants never had the cattle checked by a veterinarian, but two local cattle farmers advised them that the symptoms of the sick cattle were consistent with the side effects of infected fescue. Subsequently, the appellants commenced this action, alleging that the appellees had misrepresented the farm as suitable for cattle and hay production, and had concealed the known fungus infestation, which would have been a material fact in the appellants' decision to purchase the farm.

The appellants and the appellees both submitted affidavits from experts in conjunction with the motion for summary judgment filed by the appellees. The appellees' expert visited the property in the fall of 1991 and found the pastures to contain approximately 80 percent tall fescue, and 20 percent various other plant species. This expert was of the opinion that even if the fescue was 100 percent infected with the endophyte fungus, the farm was entirely suitable for raising cattle because of the other forage species present, and that the hay produced from the pastures would be suitable for commercial cattle feed.

On behalf of the appellants, one expert opined that the 88 to 100 percent infestation of the fescue on the property rendered the farm unsuitable for a profitable commercial cattle farm operation or horse production. The expert further stated that the only solution would be to re-establish all or a substantial part of the farm with fungus-free grasses. Another expert indicated that his inspection of the farm revealed that fescue composed approximately 90 percent of the two front pastures and approximately 70 percent of the rear pasture. This expert also considered the pastures to be unsuitable for commercial cattle and horse production without costly modifications.

1. OCGA § 51-6-2 (a) provides that "[w]illful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action." The appellees acknowledge that they presented the farm as suitable for cattle farming and growing hay, but deny any falsity to that representation. Pretermitting the question of whether a factual issue existed over the actual suitability of the farm for that purpose, we find that the representations were not actionable, and that the appellants were not justified in relying upon them in this case.

" ' "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or *mere expressions of opinion*, hope, expectation and the like . . . the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth." (Cit.)'

[Cits.]" *Miller v. Clabby*, 178 Ga. App. 821, 822 (344 SE2d 751) (1986).

In *Miller*, we found that a property owner's assertions that a fenced pasture was "suitable" for raising horses constituted nothing more than mere expressions of opinion and were not actionable. The appellees' representations as to the suitability of the property for raising cattle in the instant case likewise must be regarded as expressions of opinion. The appellants had no tests performed on the pasture grasses, and made no effort to contact any of the individuals who had leased the farm in previous years for raising cattle or who had harvested the hay, despite having the opportunity to do so. The appellants thus may not recover for their unjustified reliance upon the appellees' expressed opinion regarding the property. *Miller v. Clabby*, supra.

2. The appellants also contend that the appellees committed fraud by not revealing the fact that the farm grass was infected fescue, based upon the "passive concealment" doctrine. However, "[t]he cases creating and interpreting this doctrine have been clear to limit it to controversies between residential homeowners and residential builder/sellers as an exception to the doctrine of caveat emptor. [Cit.]" *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195, 198 (1) (393 SE2d 44) (1990). Accordingly, that doctrine of passive concealment does not apply in this case involving a sale of farm land.

3. When the Kunses sold the farm to the appellants, they executed an owner's affidavit which stated that no environmental hazard existed on the property. The appellants assert that a factual issue exists over whether the Kunses committed fraud in denying the presence of an environmental hazard, but the record is devoid of any evidence that the fungus infestation of the fescue grass in any way constitutes an environmental hazard. In fact, the only evidence in the record concerning the matter is the expert witness opinion that infected fescue is not an environmental hazard.

4. The appellants also contend that issues of fact exist over the representations by appellees Hargett and Hargett Realty, Inc., concerning the past profits of the farm generated by the cattle farm operation and the sale of hay. However, it is uncontroverted that Hargett disclaimed any knowledge about cattle farming or growing hay, and that she merely conveyed information from the Kunses to the appellants in response to the appellants' inquiries concerning those matters. Moreover, the appellants have shown no actionable misrepresentation. Specifically, with regard to profits from cattle farming, the appellants suspect that the representation of $35,000 profits in the past was false, but concede in their depositions that they had no factual basis for such an allegation. Accordingly, the trial court did not

err in granting summary judgment for the appellees on this issue as well.

5. The trial court also properly concluded that the appellees, Christine Hargett and Hargett Realty, Inc., were entitled to summary judgment on the appellants' claim for a violation of the Georgia Fair Business Practices Act (FBPA). The basis for that claim was the alleged oral misrepresentation that the property was suitable for raising cattle and for the production of hay.

"[T]he stated intent of the FBPA is to protect the public from acts and practices which are injurious to *consumers*, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally." *Zeeman v. Black*, 156 Ga. App. 82, 83 (273 SE2d 910) (1980). "A single oral misrepresentation made in the context of an isolated nondevelopmental sale of real property relating to unique facts concerning that property appears to be an essentially 'private' controversy with no impact whatsoever on the consumer marketplace." Id. at 86.

In the instant case, the sale of the farm to the appellants, and any representations preceding it, involved a private transaction which would not affect the consuming public generally. Further, as noted above, the appellants did nothing to ascertain the truth of any representations as to the suitability of the farm for raising cattle or growing marketable hay, by testing the grasses or inquiring with other individuals who had engaged in those activities on the land in recent years. Under these circumstances, even if a misrepresentation had occurred, the appellants could not recover because of their unjustifiable reliance upon such. See *Nims v. Otter*, 188 Ga. App. 516 (373 SE2d 396) (1988).

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 8, 1993.

*J. D. Rasnick*, for appellants.
*Freeman & Hawkins, T. Ryan Mock, Jr., Baldwin & Mallory, A. Quillian Baldwin, Jr., Wood, Odom & Edge, Gus L. Wood III*, for appellees.