A95A1060. ARMSTRONG TRANSFER & STORAGE COMPANY, INC. et al. v. MANN CONSTRUCTION, INC. et al.
A95A1061. FIREMAN'S FUND INSURANCE COMPANY v. ARMSTRONG TRANSFER & STORAGE COMPANY, INC. et al.
A95A1062. MANN CONSTRUCTION, INC. v. ARMSTRONG TRANSFER & STORAGE COMPANY, INC. et al.

(458 SE2d 481)

BLACKBURN, Judge.

These three appeals are from the judgment entered on the jury's verdict and the trial court's denial of motions for new trial and an alternative motion for judgment n.o.v. filed by the respective parties.

Armstrong Transfer & Storage Company, Inc. (Armstrong) operates a moving and storage business and Property Leasing IV, Inc. (PLI) is a holding company for the real property owned by Armstrong. On May 10, 1989, Armstrong executed an agreement to purchase from Sam Leveto and Clay Futch certain real property located in a Gwinnett County business park. PLI subsequently purchased the property on July 28, 1989. One year later, PLI entered into a contract with Mann Construction, Inc. (Mann) for the construction of an office/warehouse facility on the property. Pursuant to the requirements of the construction contract, Mann procured a performance bond with Fireman's Fund Insurance Company as the surety.

In late August or early September 1990, during the initial development of the property, a grading subcontractor discovered debris and trash buried within the intended building areas on the property. Discussions ensued between Leveto and Tim Wilson, the commercial real estate agent involved in the sale of the property, regarding the removal of the debris, and a proposal was made for Leveto and Futch to pay $10,000 to remove the waste. It is undisputed that any offer to pay for the removal of the waste was subject to the approval of Futch. A letter memorializing the contents of the oral agreement was forwarded to Leveto for his signature. There is no evidence that Leveto signed the document. Leveto later tendered two checks totaling over $14,000 and a release in final settlement of the matter, and the tender was unequivocally rejected by Armstrong and PLI through counsel.

The organic debris located within the intended building area of the property was subsequently removed by an excavating company and the office warehouse facility was completed in the spring of 1991. However, by September 1991, cracks appeared in the floor slab of the building and substantial movement of the walls had occurred on the rear side of the facility as a result of movements in the adjacent sloped ground. The evidence was in dispute as to the cause of movement. The roof of the facility began leaking. Mann unsuccessfully attempted to eliminate the leakage. Fireman's Fund denied PLI's re-

peated demands to correct the alleged structural defects.

Armstrong and PLI commenced the instant action based upon negligence, breach of contract, and fraud against Leveto, Futch, and their development company, Lifestyle Communities, Inc. (Lifestyle), and against Wayne Raffield,[1] Mann, and Fireman's Fund for fraud, negligence, and breach of warranty. Following a two-week jury trial, the jury returned a verdict in favor of PLI and against Mann and Fireman's Fund in the amount of $180,000 for breach of contract related to the construction of the roof, and in favor of Mann and Fireman's Fund and against PLI for breach of contract related to the structural damage to the facility. Mann was awarded $42,510 on its counterclaim against PLI for Mann's construction of a parking lot at the office/warehouse. Both Mann's and PLI's motions for pre-judgment interest were denied by the trial court, and judgment was entered on the jury's verdict. Armstrong, PLI, and Mann filed motions for new trial, and Mann additionally filed a motion for judgment n.o.v. The trial court denied both motions for new trial and Mann's motion for judgment n.o.v., and these three appeals followed.

In Case No. A95A1060, Armstrong and PLI appeal the trial court's denial of their motion for new trial and the judgment entered on the jury's verdict. In Case No. A95A1061, Fireman's Fund appeals the judgment entered against it in favor of PLI for damages based upon the breach of the construction contract. In Case No. A95A1062, Mann appeals the denial of its motions for new trial and for judgment n.o.v.

## Case No. A95A1060

1. Armstrong and PLI contend that a new trial is warranted because there was an issue of fact for jury resolution as to whether Lifestyle, Leveto, and Futch engaged in active/passive concealment of the buried debris. Specifically, Armstrong and PLI argue that Lifestyle, Leveto, and Futch deliberately permitted the burial of the debris on the property and failed to disclose the existence and location of the organic material. "However, the cases creating and interpreting th[e] [passive concealment] doctrine have been clear to limit it to controversies between residential homeowners and residential builder/sellers as an exception to the doctrine of caveat emptor." (Punctuation omitted.) *Condon v. Kunse*, 208 Ga. App. 856, 858 (2) (432 SE2d 266) (1993). See also *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195 (1) (393 SE2d 44) (1990). Consequently, this doctrine is inapplicable in the present case which involves the sale of commercial property. See id. As in *Condon*, supra, we decline

---

[1] The trial court granted Wayne Raffield's motion for directed vercict.

to extend this doctrine to the sale of commercial realty, especially in this case where Armstrong and PLI had an affirmative contractual duty to inspect the property prior to the sale.

A directed verdict was also warranted on Armstrong and PLI's claim for fraud based upon active concealment. "In a fraudulent concealment action the allegedly defrauded party must prove that the alleged defrauder had *actual*, not merely constructive, knowledge of the fact concealed. There must be some evidence of the silent party's actual knowledge that the defect exists at the time of the sale from which his moral guilt in concealing it can be inferred." (Citations and punctuation omitted.) *Webb v. Rushing*, 194 Ga. App. 732, 733 (1) (391 SE2d 709) (1990). The record is devoid of any evidence that Leveto or Futch actually knew that the debris was buried in the intended building areas of the property. Leveto specifically denied knowledge of the buried debris and Futch was not called by Armstrong and PLI as a witness at trial.

2. Next, Armstrong and PLI maintain that the trial court erred in directing a verdict in favor of Leveto, Futch, and Lifestyle, because there was some evidence that Leveto breached an oral promise to pay the cost to remove the debris.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, . . . and a subject matter upon which the contract can operate. . . . Until each [party] has assented to all the terms, there is no binding contract. . . . As price is an essential element of a valid contract, an alleged contract on which there is no firm agreement as to the price is unenforceable." (Citations and punctuation omitted.) *Bellsouth Advertising &c. Corp. v. McCollum*, 209 Ga. App. 441, 444 (2) (433 SE2d 437) (1993).

In the present case, Stoops, president of Armstrong and PLI, specifically denied having a contract with Leveto to remove the buried debris. Moreover, there was no mutual assent to the essential terms of any oral contract including the cost of the removal of the debris. See *Valiant Steel &c. v. Roadway Express*, 205 Ga. App. 237 (421 SE2d 773) (1992).

3. Armstrong and PLI further argue that a new trial was warranted because the jury's verdict is contrary to, and strongly against the weight of the evidence adduced at trial on their claim for damage to the south wall of the office/warehouse facility. Specifically, they maintain that Mann had a contractual obligation to insure that the surrounding soils supported the construction of the office/warehouse building and met minimum load-bearing requirements for improvements.

There was evidence produced at trial that showed that the soil underneath the building was properly compacted. A geotechnical engineer testified that the testing performed on the soil underneath the

warehouse and the adjacent area surrounding the building showed that the soil met or exceeded the 95 percent standard proctor maximum density as provided in the contract. The compaction density is an indirect measure for achieving the proper load-bearing capacity. Expert testimony demonstrated that the rear slope of the property collapsed because the slope was too steep for the strength of the soil and not as a result of the density of the soil underneath the building. Since there was some evidence to show that Mann did not breach its contractual obligation as alleged, a new trial was not warranted.

In addition, Armstrong and PLI were not entitled to a directed verdict on their breach of contract claim based upon a contractual provision governing the contractor's duty to disclose errors or omissions contained in the contract documents. The contract provision at issue, Paragraph 3.2.1, is limited to errors in the contract documents and does not encompass any alleged failure of Raffield to disclose to the project inspector the existence of a burial pit. Nor does the alleged conduct fall within the terms of Paragraph 3.2.2.

4. Contrary to their assertions, the trial court was proper in directing a verdict against Armstrong and PLI on the issue of assessed attorney fees and expenses of litigation. As the trial court correctly found, a bona fide controversy existed between the parties which is demonstrated by the jury's verdict. Under such circumstances, an award of attorney fees based under OCGA § 13-6-11 is precluded as a matter of law. *Read v. Benedict*, 200 Ga. App. 4 (1) (406 SE2d 488) (1991).

5. Armstrong and PLI also enumerate as error the trial court's failure to instruct the jury as requested and the trial court's giving of certain charges over objection. Specifically, Armstrong and PLI maintain that the trial court erred in failing to give their requested Charge Nos. 8, 9, 10, 14, 17, 18 and 19.

"In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Punctuation omitted.) *Lee v. Bartusek*, 205 Ga. App. 551 (1) (422 SE2d 570) (1992). We have examined each of the requested instructions and conclude that there was no error in omitting them because each is either an incomplete or incorrect statement of the law, not adjusted to the evidence or pleadings, otherwise covered in another charge, or not warranted based upon the trial court's grant of motions for directed verdict or Armstrong and PLI's voluntary dismissal of their negligence claim. See id.

Armstrong and PLI further challenge the trial court's instruction to the jury based upon the defendants' charges on the issue of agency as requested in Charge Nos. 65, 66, 67, and 68. There was evidence produced at trial that Raffield was Mann's special agent on this con-

struction project. As this court held in *Johnson v. Loggins*, 211 Ga. App. 265, 266 (3) (438 SE2d 711) (1993), "[w]hen there is any evidence, however slight, upon a particular issue, it is not error for the court to charge the law in relation to that issue." (Punctuation omitted.)

*Case No. A95A1061*

6. In this cross-appeal, Fireman's Fund maintains that the trial court erred in directing a verdict against it on its affirmative defenses of fraud and discharge. Specifically, Fireman's Fund contends that the initial draft of the construction contract upon which the company relied in making its decision to issue a performance bond was materially different from the final contractual agreement signed by the parties, and listed Raffield as a joint contractor. Based upon this material change which allegedly increased its risk, Fireman's Fund contends that it was entitled to a discharge of its obligation under the bond. Although Fireman's Fund did not file a motion for new trial prior to the filing of the instant appeal, contrary to Armstrong and PLI's assertions, the company did not waive its right to challenge the verdict on appellate review. As a party against whom the trial court directed a verdict, Fireman's Fund had the option of challenging the decision by direct appeal or by motion for new trial. *Demer v. Capital City Cable*, 190 Ga. App. 40 (1) (378 SE2d 162) (1989).

Under common law, a surety can be discharged from its obligation under a bond if its risk is increased by any act of the insured. See *West Cash &c. of Savannah v. Liberty Mtg. Corp.*, 160 Ga. App. 323 (287 SE2d 320) (1981). Notwithstanding the language contained in the "amended" contract which lists Raffield as a joint general contractor, the evidence produced at trial shows that Raffield was merely an agent of Mann. John Mann testified that Raffield was merely a job superintendent, and an agent responsible for day-to-day decision making authority, and specifically denied that a joint venture had been formed with Raffield. In addition, Mann executed a letter on August 29, 1990, specifically granting Raffield the authority to sign change orders, to make day-to-day decisions, and to execute subcontract agreements. Such documentation would have been unnecessary and merely an expression of his existing authority if the project was in fact a joint venture. Accordingly, there is no evidence of a change in the actual relationship of the parties to authorize a discharge of Fireman's Fund's obligation under the payment bond.

Additionally, there were no material misrepresentations made in the initial contract submitted to Fireman's Fund's agent and its underwriter, and consequently, an essential element of its fraud defense is lacking. See *Paul v. Joseph*, 212 Ga. App. 122 (2) (441 SE2d 762)

(1994). Moreover, Fireman's Fund cannot reasonably rely upon an unsigned document as true representation of the contractual relationship of the parties. Cf. *Walker v. Williams*, 177 Ga. App. 830, 831 (341 SE2d 487) (1986). Therefore, the trial court did not err in directing a verdict against Fireman's Fund on its affirmative defenses.

### *Case No. A95A1062*

7. In three separate enumerations of error, Mann maintains that the trial court erred in denying its motion for new trial or in the alternative, judgment n.o.v., because the verdict is unsupported by evidence on the proper measure of damages. We disagree.

"The true measure of damages under the facts in this case is the difference between the value of the work as actually done and the value which it would have had if it had been done properly in pursuance of the contract. . . . This difference in value may be shown [or] illustrated by evidence of the reasonable cost of correcting the defect." (Citations and punctuation omitted.) *Kuhlke Constr. Co. v. Mobley*, 159 Ga. App. 777, 780 (2) (285 SE2d 236) (1981).

During his testimony, one of Armstrong and PLI's expert witnesses testified that the roof was not properly installed and the roof as constructed was far below the accepted standard of workmanship within the industry. According to this expert, the excessive amount of caulking on top of the roof panels indicated that the roof was not properly installed inasmuch as the metal panels on a properly constructed roof are designed to fit together. He further opined that it was highly unusual for a roof of this age to leak unless it had not been properly installed, and the damaged panels used in installing the roof contributed to the leakage. Mann presented no evidence to rebut this testimony. This unrebutted evidence provided the trier of fact evidence from which it was authorized to find that the defect in the roof was attributable to Mann's failure to use good quality building materials and failure to provide good quality workmanship. See *McDevitt &c. Co. v. K-C Air Conditioning Svc.*, 203 Ga. App. 640 (2) (418 SE2d 87) (1992).

The expert provided three alternatives for the repair of the roof, one of the alternatives ranged in cost from $130,000 to $140,000. Another expert secured by Armstrong and PLI recommended the installation of a retro-fitted roof over the existing roof at a cost of approximately $180,000, and recommended the removal of the existing roof at an additional cost of $40,000. This evidence was sufficient data to permit a reasonable determination of allowable damages as a result of Mann's breach of the construction contract. See *Garner v. Blair*, 214 Ga. App. 357 (2) (448 SE2d 24) (1994).

8. We reject Mann's challenge to the trial court's giving of PLI's

Request to Charge No. 12. Based upon this request, the trial court properly instructed the jury that the measure of damages for breach of a construction contract is the difference between the value of the work as done and the value the building would have had if it had been constructed properly pursuant to the contract which, as discussed above, may be shown by evidence of the reasonable cost of correcting the defect. *Mobley, Inc.*, supra. The trial court also properly recharged the jury on this issue. The charge and recharge as given were correct statements of the law and were warranted based upon the evidence adduced at trial. See id. Although Mann's counsel failed to object to this charge during the charge conference, "failure to make an objection at a charge conference [does] not preclude a party from making an objection at the appropriate time, *after* the charge is given." *Brown v. Sims*, 174 Ga. App. 243, 244 (2) (329 SE2d 523) (1985).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED MAY 4, 1995 —
RECONSIDERATION DENIED JUNE 6, 1995 — 

*James W. McKenzie, Jr.*, for Armstrong.
*Webb, Carlock, Copeland, Semler & Stair, D. Gary Lovell, Jr., Porter & Barrett, Sidney R. Barrett, Jr., Long, Weinberg, Ansley & Wheeler, K. Marc Barre, Jr., Paul L. Weisbecker*, for Fireman's Fund and Mann Construction Co.