A95A1533. CROTTS ENTERPRISES, INC. v. JOHN PAYNE COMPANY, INC.
(464 SE2d 844)

BEASLEY, Chief Judge.

Crotts manages a variety of real estate properties, including the Montreal office park. Payne is a heating, ventilation, and air conditioning contractor which serviced HVAC systems at various Crotts sites and had installed some of them, including the one at Montreal. Payne sued on account and for breach of contract for $21,429.26 representing unpaid invoices. Crotts counterclaimed for breach of contract, later amending it to assert passive concealment of construction defects.

At trial, Crotts contended that Payne improperly installed the Montreal HVAC system, did not reveal this after it became apparent during service calls, but billed for repairs and blamed most of the problems on lightning strikes or electric surges. Payne denied the system was installed contrary to the manufacturer's specifications and pointed out that others had worked on the system. It also maintained that lightning strikes and surges did cause the problems and that Crotts had rejected preventive equipment. A jury awarded Payne $14,459.56, and Crotts appeals.

1. Several enumerations address jury charges. We note that the trial judge absented herself from the courtroom while the parties placed their objections on the record. This practice defeats a primary purpose of requiring counsel to object to the court's charge after it has been given, which is " 'to insure that the trial judge is afforded an

opportunity to (determine if a charging error in fact has occurred and to) correct any error in the instructions prior to verdict so that the necessity of an appeal will be obviated.' [Cit.]" *Benton v. Chatham County*, 206 Ga. App. 285, 287 (2) (425 SE2d 317) (1992). The purpose is not simply to "perfect the record" for appeal. See OCGA § 5-5-24 (a).

2. The court refused to give Crotts's requested jury charge on passive concealment, which it enumerates as error. See *Miller v. Clabby*, 178 Ga. App. 821, 822 (344 SE2d 751) (1986). The doctrine is clearly limited " 'to controversies between residential homeowners and residential builder/sellers as an exception to the doctrine of caveat emptor.' [Cits.]" *Armstrong Transfer &c. Co. v. Mann Constr.*, 217 Ga. App. 538, 539 (1) (458 SE2d 481) (1995). As in *Armstrong*, the doctrine is inapplicable because the case involves commercial property.

3. Crotts contends the collateral source rule should have prevented the court from charging the jury that, as to the counterclaim, the jury "must" reduce any amount awarded Crotts by the amount Crotts had received from its insurer. First, despite Crotts's statements here, its counterclaim sounded only in contract; as discussed above, the court properly did not present any tort theory to the jury. The collateral source rule does not apply in contract cases because to do so would give the contract claimant more than his actual damages and more than he would have received if the contract had been fully performed. *Amalgamated Transit Union &c. v. Roberts*, 263 Ga. 405, 406-408 (1) (434 SE2d 450) (1993).

Second, if the court erred in charging the jury it "must" reduce any counterclaim award, there was no harm because the jury found against Crotts on the counterclaim. Crotts contends there was harm because the charge induced the jury to reduce Crotts's counterclaim by the amount of insurance benefits Crotts had received, $20,913.65; take the remaining counterclaim amount; and use it to reduce Payne's award on the main claim. Even if such a calculation would produce Payne's award from the evidence presented, we cannot assume the jury engaged in such an exercise. A special verdict form was used, and the jury specifically found that Payne was not liable to Crotts on the counterclaim.

Additionally, in response to Crotts's motion for new trial, Payne submitted an affidavit of the jury foreman sustaining the verdict. See OCGA § 9-10-9. The affidavit showed the jury completely rejected all Crotts's bases for its counterclaim and did not make the calculation adjustments Crotts contends it did. There could be no harm from any error. *Pouncey v. Adams*, 206 Ga. App. 126, 127 (424 SE2d 376) (1992).

Similarly, Crotts's third enumeration, asserting error in the ex-

clusion of evidence concerning amounts it had paid for insurance premiums, fails because the evidence affected only the issue of damages on the rejected counterclaim.

4. Crotts contends it was error for the court to charge the jury with the language of OCGA § 24-4-23, relating to the presumption arising from the failure to answer a business letter, arguing that Payne's letter of July 26, 1991, which mentioned "outstanding invoices" totaling $24,912.86, was not a product of "mutual correspondence." See *American Express &c. Co. v. Berlye*, 202 Ga. App. 358, 361 (2) (414 SE2d 499) (1991). The letter followed two letters to Payne dated February 1 and March 11, 1991, which reported problems and requested service. Even if this did not establish a mutual correspondence about Payne's work, a strict mutual correspondence, in the sense of an exchange of several letters, is not always necessary. The statute refers to the "ordinary course of business," and the question is whether the evidence shows "such a 'due course of business' as to warrant the application of this [Code] section." *Western Union Tel. Co. v. Nix*, 73 Ga. App. 184, 191 (3) (36 SE2d 111) (1945). It is undisputed that repeated service calls were made and invoices prepared and presented. Payne's letter was in the ordinary course of business, so it was not error to give this charge.

5. Finally, Crotts contends its motion for directed verdict should have been granted because Payne's claim was actually a claim in quantum meruit rather than a claim on a commercial account, and Payne did not produce any evidence of the value of the services rendered, only the amount charged. No authority is cited. The claim is for "an obligation for the payment of money arising out of a transaction to sell or furnish . . . goods or services." See OCGA § 7-4-16. Although *Moore v. Hendrix & Hodges*, 144 Ga. 646, 648 (87 SE 915) (1916), states that parties must have an agreement on a fixed amount to establish an account stated, the same is not required for a claim on open account. See *Kay Solar Systems v. Rome Printing Co.*, 160 Ga. App. 825, 826 (1) (287 SE2d 675) (1982). A directed verdict was not mandated.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 28, 1995.

A. Joseph Nardone, Jr., for appellant.
Rachelson & Beloin, Frederic S. Beloin, for appellee.