## A02A2316. SAVAGE v. KGE ASSOCIATES LIMITED PARTNERSHIP.
## A02A2317. LIFESHARES GROUP, INC. et al. v. KGE ASSOCIATES LIMITED PARTNERSHIP.
### (580 SE2d 591)

ADAMS, Judge.

In this case, the seller of commercial property did not disclose to the buyer the presence of a covered-over, nonhazardous dump located on a small part of a 442-acre tract of land. Long after the sale, the buyer brought suit against the seller and related parties. When the trial court denied the defendants' motions for summary judgment, it applied the passive concealment doctrine, an exception to the general rule of caveat emptor, in favor of the buyer. But that doctrine applies only to noncommercial transactions, and the parties did not incorporate any similar protection or relevant representations or warranties in the sales agreement. Accordingly, the defendants are entitled to summary judgment.

In 1988, Farm & Home Life Insurance Company owned a 442-acre tract of zoned-industrial land in Douglas County on which Farm & Home's property manager, Bart Hulsey, operated an illegal open dump consisting of construction waste, land clearing debris, and some household garbage. County and state officials became aware of the dump in March 1988, and the Georgia Department of Natural Resources Environmental Protection Division ("EPD") directed Farm & Home to either remove the materials or bury them beneath two feet of clean earth and provide a vegetative cover. The purpose of the remedial order was to address the threat to human health and the environment resulting from an open dump. Farm & Home buried the materials, and on May 26, 1988, the EPD certified that "the site had been closed in a manner which complie[d] with the minimum requirements of the Solid Waste Management Act and Rules." Estimates of the size of the site range up to 2.3 acres. Documents and records maintained by the EPD and Douglas County regarding the

dump and the remediation effort have been continuously available to the public for inspection since 1988.

On June 19, 1989, Farm & Home entered into a contract to sell the property to Buckhead Farms, Inc., and Buckhead later assigned its rights under the contract to KGE Associates Limited Partnership. In Section 10 (h) of the agreement, Farm & Home represented that it was not aware of any claim, action, or other proceeding, in progress, pending, or threatened, that would adversely affect consummation of the sale, or any facts which could form the basis of such a claim.[1] During the negotiation of the agreement, Buckhead agreed to drop warranties that provided that Farm & Home was not aware of third parties dumping hazardous waste on the property or aware of any "hazardous or toxic materials, substances or waste" alleged to exist on *or below* the property.

The agreement also required Farm & Home to execute and deliver at closing an affidavit "as may be required by Purchaser's title company in the form and substance similar to those title affidavits customarily delivered at real estate closings of a similar nature in Douglas County." Five months later at the closing, Farm & Home provided an "Affidavit as to Ownership," signed by Joseph Savage, in which it certified that Farm & Home:

> has no knowledge of or information regarding the existence of or presence in or on the Property of any material, radioactive substance or tailings, asbestos, PCB's or any other substance identified by federal, Georgia or local law, ordinance, rule, regulation, order or code as a health or environmental hazard, garbage and/or waste.

Savage did not even read the affidavit before he signed it, and whether he had knowledge of the covered-over dump is disputed.

Finally, the agreement gave the purchaser the right to inspect the property, including the right to conduct soil tests, core drilling, environmental tests, and engineering studies. The purchaser had 90 days for this process, and any failure to object within the 90-day period waived any basis for terminating the agreement.

On November 17, 1989, five days before the scheduled closing, Buckhead and KGE retained CTA Environmental, Inc., an environmental consulting firm, to perform an environmental audit of the property. CTA found evidence of human disturbance and surface-level debris on the property, including stacks of sheetrock, large

---

[1] In Section 10 (i) Farm & Home represented that "Seller has never generated, stored or disposed of any hazardous substances on the Property. . . ." But KGE and the EPD agree that the buried debris is not hazardous within the meaning of this subsection.

empty crates, empty 55-gallon drums, metal studs, parts of a truck, about 15 five-gallon drums or pails, disassembled fluorescent light ballasts, tires, urban garbage, parts of three house trailers, two large tanks, burned household garbage, trash, and litter. But it failed to find the covered-over dump. CTA contacted the owner, and the more worrisome items were removed. CTA stated that the remaining visible debris, though unsightly, "pose[d] no obvious, long-term threat of environmental impairment." It also concluded that "[t]here is no evidence of any massive earth moving at any recent time except for [two areas not in issue]." But, CTA cautioned that it could not do a full environmental audit given the limited time it was given to perform its work. It stated, "We must stress that our survey was localized and confined to areas with problems visible from the air or associated with human use areas or structures." And CTA warned that there were areas on the property that "could, theoretically, hide other materials."

At some point, KGE sought an extension of the closing date in order to obtain more time for the environmental audit. In response, someone from Farm & Home allegedly said, "You don't need to waste time on the environmental, you're buying virginal farmland. We have given you the warranty and there is our affidavit to the title company. . . . Let's move along."

KGE eventually discovered the covered-over dump, and on November 6, 1995, almost six years after it purchased the property, it brought suit against Farm & Home and others who, it contends, had knowledge of the cover-up. Among other things, KGE alleged that it was fraudulently induced to buy the property, and it introduced testimony that a clean-up could cost $1.2 million or more.

KGE settled with some defendants and dropped others; the remaining defendants are Lifeshares Group, Inc. (which owned Farm & Home, managed the property, and participated in the sale); Harry Carneal (executive vice-president of Lifeshares and its subsidiary Farm & Home); and Savage (an officer of Lifeshares who signed the affidavit).[2] The trial court denied these three defendants' motions for summary judgment and held:

> In the instant case, there are questions of material fact as to whether [KGE] exercised due diligence in its inspection of the property prior to the purchase, whether [the property

---

[2] The following claims remain against Lifeshares, Carneal, and Savage: fraud; violation of the Georgia Racketeer Influenced and Corrupt Organizations Act; breach of contract (against Lifeshares and Savage only); promissory estoppel; unjust enrichment (against Lifeshares only); civil conspiracy; and attorney fees and costs.

manager's] knowledge of the dumpsite may be imputed to [KGE], the roles of Carneal and Savage in the land sale, whether Defendants knowingly and intentionally concealed the existence of the buried trash, whether the Defendants' representations made to [KGE] regarding the property were false, and whether the value of the property has been diminished by the existence of the dump.[3]

The court also applied the passive concealment doctrine in favor of KGE. Savage appealed in Case No. A02A2316, and Lifeshares and Carneal appealed in Case No. A02A2317.[4]

1. The three appellants contend the trial court incorrectly applied the passive concealment doctrine to KGE's fraud claim. That doctrine establishes an exception to the general rule of caveat emptor in real estate transactions; however, application of the doctrine has been limited to controversies between residential homeowners and residential builder/sellers, and it does not apply to commercial transactions. See *Crotts Enterprises v. John Payne Co.*, 219 Ga. App. 173, 174 (2) (464 SE2d 844) (1995); *Armstrong Transfer &c. Co. v. Mann Constr.*, 217 Ga. App. 538, 539 (1) (458 SE2d 481) (1995); *Condon v. Kunse*, 208 Ga. App. 856, 858 (2) (432 SE2d 266) (1993); *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195, 198 (1) (C) (393 SE2d 44) (1990). But see *Holman v. Ruesken*, 246 Ga. 557, 558 (2) (272 SE2d 292) (1980). Because that doctrine does not apply, Farm & Home did not owe a duty to Buckhead or KGE to disclose known defects in the property.

But even though the trial court applied the wrong legal standard, because our review on appeal is de novo we address the merits of the trial court's denial of the parties' motions for summary judgment. *City of Winder v. McDougald*, 254 Ga. App. 537, 539 (2) (562 SE2d 826) (2002). Compare *Gwinnett County v. Davis*, 268 Ga. 653, 655 (492 SE2d 523) (1997) (remand required where trial court relied on wrong legal standard during bench trial).

2. KGE claims that Farm & Home made three wilful misrepresentations, one in the Savage Affidavit, one in Section 10 (h) of the agreement, and one in the statement that the land was "virginal farmland." The appellants contend that the agreement's merger clause and the parol evidence rule preclude the claims based on the Savage Affidavit and the virginal farmland comment. They also con-

---

[3] Sometime after the closing, without realizing his earlier role with regard to the dump, KGE retained Hulsey, the former Farm & Home property manager, to be the caretaker for the property.

[4] Oral argument was heard by this Court in November 2002. The author of this opinion has listened to a tape-recording of that argument.

tend that, properly construed, Section 10 (h) of the agreement was true. They argue that KGE also cannot show reliance on the alleged misrepresentations or damages. For the following reasons, we find that KGE's claims based on the three representations must fail.

(a) KGE claims that the Savage Affidavit essentially makes a representation that the property contained "no waste, no garbage-period," that it relied on the affidavit, and that the seller obviously breached that representation. But, under the plain terms of the sales agreement, even if the affidavit could be construed as containing such a representation, it did not survive the closing of the transaction.

Although KGE has alleged fraud, because it has affirmed the contract and is suing for damages, it is bound by the terms of the agreement and is subject to any defenses that may be asserted based on the agreement. *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 75 (441 SE2d 421) (1994). One of the defenses found in the agreement is the following survival clause:

All the terms and conditions of this Agreement not performed at closing shall survive the closing hereunder and shall not be merged into the closing documents. In any event, the representations and warranties of Seller contained in this Agreement shall expressly survive the Closing Date.

Also, the closing statement that the parties signed on November 22, 1989, states that two additional provisions shall survive the closing, but neither pertains to the Savage Affidavit. See *Toys 'R' Us*, 195 Ga. App. at 198 (2) (A) (sales contract and closing statement both weigh on what provisions of sales contract survive closing).

The general law of survival of terms and conditions is that those found in the sales contract do not survive the closing unless specifically reserved or unless they are not performed by delivery and acceptance of the deed. *Worthey v. Holmes*, 249 Ga. 104, 105 (1) (287 SE2d 9) (1982); *P. B. R. Enterprises v. Perren*, 243 Ga. 280, 282 (2) (253 SE2d 765) (1979). Ultimately, "[t]he application of the doctrine of merger depends upon the intention of the parties." (Citation and punctuation omitted.) *Toys 'R' Us*, 195 Ga. App. at 198 (2) (A). In this case, the survival clause and closing statement show that the parties intended that terms and conditions of the agreement that were performed at closing would not survive the agreement, whereas the representations and warranties, which are found in Section 10 of the agreement, would.

Section 6.03 (b) of the agreement, the only provision referencing

the title affidavit, is a term that did not survive the closing. It provides:

> At closing, the following documents shall be executed and delivered: . . . (b) Affidavit executed by an officer of Seller as may be required by Purchaser's title company in form and substance similar to those title affidavits customarily delivered at real estate closings of a similar nature in Douglas County, Georgia.

It is undisputed that the seller performed the task required by Section 6.03 (b) at closing: it provided the Savage Affidavit in the proper form as required by the title company. And the title company issued a policy. Accordingly, Section 6.03 (b) was fully performed at closing and did not survive the agreement. As a result, KGE has no claim based on Section 6.03 (b) of the agreement.

Nor can KGE claim that the Savage Affidavit was incorporated into the sales agreement or that it modified the sales agreement to create another representation or warranty. First, nowhere in the sales agreement is the title affidavit incorporated by reference into the agreement. Just because a sales agreement requires the seller to provide a document to the buyer in connection with the transaction does not mean that the separate document is automatically incorporated as a part of the sales agreement. *Ainsworth v. Perreault*, 254 Ga. App. 470, 473-474 (1) (563 SE2d 135) (2002). In *Ainsworth*, residential home buyers initialed on the sales contract that they had received the seller's disclosure statement. But the contract did not provide that the disclosure statement had been made a part of the agreement. Therefore, the contract's merger clause operated to bar a claim based on representations made in that statement. Id. at 474 (1).

Second, the sales agreement provides that it could only be modified with a writing signed by all parties. The title affidavit was not signed by all parties, and therefore it could not modify the sales agreement. In addition, when Buckhead assigned the sales agreement to KGE at closing, Buckhead represented to KGE that the sales agreement had not been modified except to extend the closing date. For this reason, KGE cannot claim that the Savage Affidavit modified the agreement.

Nor was the Savage Affidavit intended to directly benefit KGE. The Savage Affidavit states that its purpose was "to induce [the title company] to issue its policy of title insurance insuring the interest of the purchaser of the Property and to induce the attorney certifying title to so certify." Accordingly, there is nothing in the title affidavit

itself to suggest that it was intended to survive the closing for the benefit of KGE.

In short, the contents of the affidavit were not a part of the sales agreement, the affidavit was not intended to directly benefit KGE, and it did not survive the closing of the transaction. The fact that the affidavit was bound together with the sales agreement and several other documents to form the closing binder is irrelevant. Although contemporaneous writings are admissible to explain each other, OCGA § 24-6-3, there is nothing in the affidavit that helps explain the meaning of the sales agreement. It cannot be used, as KGE insists, to add a representation or warranty to the sales agreement that is not there.

The sales agreement also contains an entire agreement clause that provides: "This Agreement constitutes the sole and entire Agreement between the parties hereto." An entire agreement clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. The purchaser is, therefore, barred from claiming that he or she relied on an alleged misrepresentation not contained within the agreement." (Punctuation and footnotes omitted.) *Herman Homes, Inc. v. Smith*, 249 Ga. App. 131, 132-133 (1) (547 SE2d 591) (2001). Because we have already determined that the Savage Affidavit was not a part of the sales agreement, KGE is barred from relying on any alleged representation found in it. KGE's argument that the doctrine of merger does not preclude consideration of statements that are consistent with the agreement cannot be used to expand the scope of the agreement. Cf. *Hayes Constr. Co. v. Thompson*, 184 Ga. App. 482, 483 (1) (361 SE2d 865) (1987) (parol evidence is consistent with an agreement if the agreement already contains terms going to the same effect).

*Dyer v. Honea*, 252 Ga. App. 735 (557 SE2d 20) (2001), is distinguishable. In *Dyer*, the seller executed an affidavit at closing stating that there were no liens, security interests, or corporate debts affecting the property. Id. at 739 (3) (b). But the affidavit reflected that it was offered " 'for the specific purpose of inducing' " the buyer to purchase the property. Id. Therefore this Court concluded that the affidavit was made a part of the contract. Neither do we find *Fann v. Mills*, 248 Ga. App. 460 (546 SE2d 853) (2001), controlling. In that case, the agreement required the seller to supply a wood infestation report, which contained representations regarding termites. Id. at 464 (2). But there was no indication that the wood infestation report indicated that it was provided for a specific purpose, as was the title affidavit in this case.

Next, KGE cannot claim to be a third-party beneficiary of the Savage Affidavit such that it could rely on the substance of any rep-

resentations contained therein. To create a third party beneficiary "it must clearly appear from the contract that it was intended for [another's] benefit." (Citations and punctuation omitted.) *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (1) (530 SE2d 208) (2000). As shown above, the affidavit states that it was only intended to induce the title company to issue a policy. Although having a title policy clearly benefitted KGE, the affidavit cannot be read as intending to create a set of representations and warranties about the property, separate from the representations found in the sales agreement, intended for the direct benefit of the buyer. KGE is only an incidental beneficiary of the content of the affidavit and did not acquire any rights under the affidavit as a third-party beneficiary. See id. at 458 (1). See also *McClung Surveying v. Worl*, 247 Ga. App. 322, 325-326 (2) (541 SE2d 703) (2000).

Finally, any possible reliance by KGE on the Savage Affidavit is unreasonable as a matter of law. According to KGE, the affidavit makes the claim that there was "no waste, no garbage — period." But CTA, the environmental auditor hired by KGE and Buckhead, told KGE in its report that there was in fact waste and garbage all over the property. And, CTA cautioned KGE that it was unable to perform a complete audit due to time constraints. Even assuming that the Savage Affidavit can be given the interpretation offered by KGE and that the representations contained in the affidavit became a part of the agreement and survived the closing, the CTA report gave notice to KGE — before closing — that the affidavit was incorrect. KGE cannot rely on a claim that there was no garbage or waste on the property in the face of a report prepared by its own expert stating that there was. See *Fann v. Mills*, 248 Ga. App. at 463 (1).

(b) KGE also contends that the defendants breached the representation in Section 10 (h) of the sales agreement, which provides as follows:

> There are no claims or legal actions or other legal or administrative proceedings in progress or pending, or to the knowledge of Seller, threatened against or relating to the Seller which will adversely affect the consummation of this transaction, and Seller is not aware of any facts which could form the basis of any such claim, action or other proceeding.

KGE asserts that the earlier action by the local authorities and the EPD, which led to covering the dump, constitutes the type of claim of which Farm & Home should have given notice under this clause. But KGE has not cited any evidence to show that that action or any other action or proceeding was still in progress or pending as of the date of the sales agreement. Rather, the only cited evidence is

that over one year before the parties entered into the sales agreement, the EPD certified that Farm & Home had complied with the EPD's order to remediate the open dump. Accordingly, there is no evidence that a claim was pending as of the date of the sales agreement.

KGE contends that Farm & Home violated the second clause of Section 10 (h) because it had knowledge of "facts which could form the basis of any such claim, action or other proceeding[, i.e., one that would adversely affect the consummation of this transaction]." But, because no such claim in fact affected consummation of the sale, the representation found in Section 10 (h) cannot have been breached.

The rules of contract construction are well known.

> The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. Construction of a contract by the court involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.

(Citations and punctuation omitted.) *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (1) (574 SE2d 585) (2002).

The clear intent of the representation in Section 10 (h) was to require Farm & Home to disclose in June any possible third-party claim against it — of which it was aware, or that it expected based on facts of which it was aware — that might affect the closing scheduled for November. The representation protected KGE from the frivolous exercise of proceeding with the transaction in a situation where Farm & Home was aware of the possibility that a claim or proceeding would or could upset the deal. But there is no evidence that Farm & Home was aware of such a claim. In fact, no such claim or proceeding occurred — the transaction was consummated.

To the extent Section 10 (h) is ambiguous, it simply cannot be construed to be a blanket representation that Farm & Home was not aware of any facts *that might cause KGE not to go forward with the transaction*, which is in effect what KGE claims. A court must construe a contract to uphold it in whole and in every part. OCGA § 13-2-2 (4). In this case, the agreement contains a limited list of represen-

tations and warranties, and it placed the duty of inspection on the buyer. Given these aspects of the agreement and the fact that the doctrine of passive concealment is not applicable as a matter of law, there is nothing to suggest that the parties intended to agree that Farm & Home would be liable for incidents of concealment. To construe the agreement in that fashion would be to rewrite the agreement, which we are not permitted to do. See *Piggly Wiggly Southern v. Heard*, 261 Ga. 503, 504 (405 SE2d 478) (1991).

Because there is no evidence that Farm & Home made a misrepresentation in Section 10 (h) of the agreement, the trial court erred by failing to grant summary judgment on this claim.

(c) KGE contends that someone at Farm & Home made a misrepresentation by stating that KGE was buying "virginal farmland." But the statement is double hearsay: a KGE representative testified that he was told by another KGE agent that a Farm & Home representative made the statement. And KGE has not attributed it to a specific person representing the defendants. Although the statement might be an admission against interest, that exception would overcome only one layer of the hearsay. See *Highsmith v. Fillingim*, 171 Ga. App. 548, 549 (320 SE2d 391) (1984) (although one layer of hearsay may be overcome with exception to hearsay rule, second layer of hearsay remained). Accordingly, the evidence is inadmissible and cannot be a basis for denying summary judgment in favor of the defendants.

3. Resolution of the above issues resolves KGE's claims of fraud, promissory estoppel, Georgia Racketeer Influenced and Corrupt Organizations Act violations, and conspiracy against the three remaining defendants. With regard to unjust enrichment, see *Cochran v. Ogletree*, 244 Ga. App. 537, 538 (1) (536 SE2d 194) (2000) (theory of unjust enrichment applies when there is no legal contract). All remaining enumerations of error are moot.

*Judgment reversed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED MARCH 19, 2003 —
RECONSIDERATION DENIED APRIL 8, 2003 —

*Freeman, Mathis & Gary, T. Bart Gary, Stuart W. Gray*, for appellant (case no. A02A2316).

*King & Spalding, W. Ray Persons, Patton & Boggs, Mitchell Berger, William E. Slade, Michael T. Wood*, for appellants (case no. A02A2317).

*Miller & Martin, Geoffrey H. Cederholm*, for appellee.