**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 16, 2016**

# In the Court of Appeals of Georgia

A16A1277. GADD v. WARWICK.

BOGGS, Judge.

Joseph Gadd appeals from the trial court's grant of summary judgment to Farrell Warwick in this case involving immunity provided by Georgia's Injuries From Equine or Llama Activities Act ("the Equine Act"), OCGA § 4-12-1 et seq. Gadd asserts that genuine issues of material fact exist with regard to the application of two exceptions to the immunity provided by the Act, that the trial court erred by imposing a legal requirement of showing dangerous propensity, and that issues of fact exist with regard to the horse's dangerous propensity. For the reasons explained below, we affirm the trial court's grant of summary judgment to Warwick.

Summary judgment is proper when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. v. Chatham County,* 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). So viewed, the undisputed evidence shows that 19-year-old Gadd was injured while riding a horse at a summer camp where he worked "as a camp counselor assigned to work in the equine activities program." One of his "basic job duties was to take children on trail rides at the camp."

> On May 30, 2011, the decision was made by the supervisor of the [c]amp . . . equestrian program to take a staff group trail ride on the horses. The purpose of the ride was to get the horses accustomed to the normal routine which would be employed after the children arrived at the camp and the normal camp activities began . . .

> Before [Gadd] went out on the ride taking place at the time of [his] injury, Warren Manne, the supervisor of the camp's equestrian program, assigned each rider to a particular horse. He assigned [Gadd] to ride the grey horse, which was called "Greg."

Gadd was injured when the horse jumped over a small stream less than 12 inches wide, rather than stepping over it. Gadd lost his balance somewhat following the jump, "the horse reared up very high on his hind legs and lost his balance," Gadd then fell from the saddle, and the horse landed on top of him.

Greg, as well as all of the other horses used by the camp, were provided by defendant Warwick pursuant to a contract between Warwick and the camp. Warwick leased horses and equipment to the camp each summer beginning in 2004. The lease agreement required Warwick to provide 32 horses "appropriate for children ages 7-16" and also required him to replace "any horses deemed inappropriate (i. e. too wild, unhealthy) *by [the camp]* within 48 hours." (Emphasis supplied.)

Gadd subsequently filed a complaint against Warwick alleging negligence and wilful and wanton disregard for the safety of persons riding the horse he provided to the camp. Following discovery, Warwick moved for summary judgment in his favor based upon the immunity provided by the Equine Act. After the trial court's grant of Warwick's motion, Gadd filed a timely appeal with this court.

1. Gadd claims the trial court erred because genuine issues of material fact exist with regard to the application of exceptions to the immunity provided by the Equine Act. We disagree.

In the preamble to the Equine Act, the General Assembly made the following express legislative findings:

> The General Assembly recognizes that persons who participate in equine activities or llama activities may incur injuries as a result of the risks

involved in such activities. The General Assembly also finds that the state and its citizens derive numerous economic and personal benefits from such activities. The General Assembly finds, determines, and declares that this chapter is necessary for the immediate preservation of the public peace, health, and safety. It is, therefore, the intent of the General Assembly to encourage equine activities and llama activities by limiting the civil liability of those involved in such activities.

OCGA § 4-12-1. In accordance with these findings, we have held that the General Assembly intended to create broad immunity "with narrowly defined exceptions." (Citations and footnote omitted.) *Holcomb v. Long*, 329 Ga. App. 515, 520 (1) (765 SE2d 687) (2014).

In this case, Gadd's injuries clearly resulted from the "inherent risks of equine activities" for which the Equine Act provides immunity. See OCGA § 4-12-2 (7) (A) ("The propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them."); OCGA § 4-12-2 (7) (B) ("The unpredictability of the animal's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals."); OCGA § 4-12-3 (a) (providing immunity "for an injury to or death of a participant resulting from the inherent risks of equine activities"). We therefore must determine whether one of the exceptions of the Equine Act applies.

4

(a) A person loses immunity under OCGA § 4-12-3 (b) (1) (B) only if he "[p]rovided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to safely manage the particular animal based on the participant's representations of his or her ability." Id. It is clear from the plain language of this exception that it contemplates that the person sought to be held liable provided a particular horse to a particular participant with a corresponding opportunity to make the inquiries enumerated in the statute. Warwick provided the horse to the camp, not Gadd, and the supervisor of the camp's equestrian program, not Warwick, assigned Gadd to ride the particular horse on the day he was injured. Accordingly, this exception does not apply to the particular facts before us.

(b) The record also fails to create a genuine issue of material fact regarding the exception in OCGA § 4-12-3 (b) (4), which allows liability if a person "[c]ommits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury."

We have previously outlined the following definitions of willful and wanton in the context of the Equine Act:

5

Wil[l]ful misconduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent. Wil[l]ful misconduct, or wil[l]ful failure or refusal to perform a duty required by statute, is more than negligence or even gross negligence; it involves conduct of a criminal or quasi-criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with the wanton and reckless disregard of its probable consequences.

(Citations and punctuation omitted.) *Adams v. Hare*, 244 Ga. App. 605, 609 (2) (b) (536 SE2d 284) (2000).

The record shows that the horse had been leased to the camp by Warwick the two previous summers, and there is no evidence showing any previous issues or incidents with him.[1] The supervisor of the camp's equestrian program testified that it was "very likely" that the horse had been on the same trail where Gadd was injured in previous summers because it was a trail commonly used throughout the summer

---

[1] A camp counselor's testimony that she heard a walkie talkie transmission stating that the same horse bucked a child off the summer before was inadmissible hearsay. See *Savage v. KGE Assocs.*, 260 Ga. App. 770, 779 (2) (c) (580 SE2d 591) (2003); *Seed v. Smith & Woods Mgmt. Corp.*, 242 Ga. App. 395, 396 (1) (530 SE2d 29) (2000) ("an alleged statement by an unidentified witness is hearsay and inadmissible"). Additionally, there is no evidence that this alleged incident was reported to Warwick.

at the camp. There is no evidence of previous incidents with horses at the camp on this portion of the trail. The supervisor also testified that the horse would have been ridden in the arena before it was taken out on the trail ride which resulted in Gadd's injury. He described Gadd as having "good experience and he was a strong rider."

The expert testimony relied upon by appellant to show a willful or wanton "act or omission" on the part of Warwick is also insufficient to create a genuine issue with regard to the application of this exception. The experts opined that the horse's age,[2] pedigree,[3] training,[4] and conditioning[5] before arriving at camp did not fulfil the contractual requirement of providing horses suitable for beginner riders and children. While these acts and omissions evidence may create issues of fact with regard to negligence, they do not rise to the level of "wanton and willful" conduct with regard

---

[2] The horse was five years old.

[3] The horse was the son of a barrel racing horse and great-great-grandson of an "athletic" horse with a reputation of being "a pretty tough horse to ride."

[4] The horse acted "fresh" and was shaking his head at the start of the trail ride. An expert watched a video of the horse made for the purpose of selling him at an unknown point after the incident and opined that he "was obviously very green. Its trot was not very good. He had his head stuck up in the air. The canter that the horse had was certainly all sprawled out."

[5] Gadd's experts also testified that the horse was inadequately conditioned or prepared for trial ride use before being delivered to the camp.

to a horse ridden by a 19-year-old camp counselor with undisputed riding experience, particularly when there was no admissible evidence of previous incidents with the horse the two previous summers. See *Holcomb*, supra, 329 Ga. App. at 521 (2) (evidence showed negligence "at most," not willful or wanton disregard for safety of participant under Section 4-12-3 (b) (3)); *Adams*, supra, 244 Ga. App. at 608-609 (2) (b) (evidence fell short of showing wilful and wanton disregard for safety where no evidence that defendant knew horse had intentionally kicked a person before).

2. Gadd's remaining enumerations of error are rendered moot by our holding in Division 1.

*Judgment affirmed. Barnes, P. J., and Rickman, J., concur*.