A00A0624. REMAX NORTH ATLANTA et al. v. CLARK.
(537 SE2d 138)

ELLINGTON, Judge.

Regina Clark sued Rebecca and Dean C. Bryant and their real estate sales agents, ReMax North Atlanta, Inc. ("ReMax") and Scheri Caldwell, for fraudulently misrepresenting the condition of and con-

---

cealing material defects regarding the Cherokee County home she purchased in August 1994. The jury returned a verdict in Clark's favor and awarded $40,000 in compensatory damages.[1] Appellants ReMax and Caldwell contend the trial court erred in denying their motion for a directed verdict, their motion for new trial, or their motion for judgment notwithstanding the verdict because the evidence adduced against them was insufficient as a matter of law to establish the elements of fraud. We agree and reverse the judgment.

In reviewing a jury verdict after the denial of a motion for judgment n.o.v. or for new trial, we follow these well-established principles:

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict and new trial will not be disturbed.

(Citation and punctuation omitted.) *Brown v. Mann*, 237 Ga. App. 247-248 (1) (514 SE2d 922) (1999). Viewed in this light, the record reveals the following:

In late July 1994, Clark began looking for a home to buy. Because she had to vacate her old home within 30 days, she needed to find something quickly. Clark enlisted the aid of Denise McDonald, a real estate sales agent with ReMax Suburban Atlanta, Inc. McDonald told Clark about the Bryants' home, which had just been listed with the Multiple Listing Service by Caldwell, a sales agent affiliated with ReMax North Atlanta. Caldwell had been retained by the Bryants on July 29, 1994, the same day the house was listed. Clark and her son immediately went to the house and knocked on the Bryants' door. Mrs. Bryant admitted Clark into the house and allowed her to walk through it for about 15 minutes.

The next day, Clark returned to the house with her agent, McDonald. Clark testified that during this second visit, Caldwell was

---

[1] The jury awarded $40,000 in compensatory damages against the defendants jointly and severally. The final judgment was reduced by $7,500 to reflect payments to Clark from third parties. The jury also awarded $60,000 in attorney fees and $16,500 in punitive damages against the Bryants.

present and said the following to her: (1) the Bryants' home was a "good buy" and was in "good condition"; (2) Mr. Bryant, who had added a room in the basement, was "real good at handy work and he did a lot of work for himself"; (3) Mr. Bryant "was good at fixing things"; and (4) Caldwell said she was "friends" with the Bryants and they were "really good people," "nice people," "honest," and "she liked them." Clark said she was not able to adequately inspect the house on this occasion because it was full of furniture and boxes and playing children.

On August 2, 1994, shortly after her second visit, Clark made an offer on the house, which was accepted on August 3, 1994. The contract set the closing for August 15, 1994. The real estate sales agreement contained a disclaimer in which the seller and buyer acknowledged they have not relied on the broker's representations including, but not limited to, the structural condition of the home, the operating condition of the plumbing, and the resale value of the home.

After Clark made her offer, she received a copy of the Bryants' disclosure statement, which the Bryants had filled out previously on July 29, 1994. There is no evidence from which the jury could infer that Caldwell counseled or assisted the Bryants in filling out the form. The form expressly states that it contains a disclosure of the "Seller's knowledge of the condition of the property" and is not "a warranty or representation by the listing broker, the selling broker, or their affiliated licensees." The Bryants disclosed no defects or problems with their home.

About a week after her second visit, Clark again walked through the house, this time accompanied by her parents. Caldwell was also present. Clark said it was difficult to assess the condition of the house because it was full of boxes and furniture and because the shades were drawn, making the home dark. She noticed the strong smell of air freshener. Clark also noted water damage on the ceiling next to the fireplace. Clark testified she was told, although not by whom, that the damage occurred when the Bryants put out a fire that started on their Christmas tree. Clark did not inspect the attic because Mrs. Bryant asked her not to since it was "a mess." Finally, Clark noticed that the Bryants were in the process of painting the master bedroom, the hall, and the stairwell walls. Clark did not hire a professional to inspect the house before buying it, even though her agent wrote an inspection clause into the real estate sales agreement.

Within a few weeks after she bought the house, Clark discovered that the plumbing connection to her washing machine was inadequate. She also began to smell a foul odor coming from beneath the basement's raised bathroom. And, when it rained, she found that the roof leaked. When she went into the attic, Clark saw that the wood

was bowed and rotten and that water was flowing down the flashing the entire length of the house.

In September 1994, Clark hired a home inspector. The inspector testified that the house had the following problems: (1) an overflowing septic tank, (2) water damage and rotten wood in the ceiling and exterior siding of the house, (3) rotten lumber in the deck flooring, (4) water damage in the kitchen, and (5) inadequate plumbing in the laundry and bathrooms. The inspector opined that the ceiling had been leaking for a long time, well over a year, and that the residents would have known of it. He noted that the fresh paint in the house covered old water spots that were beginning to bleed through. And, several rotted deck boards had been turned over so that the rot was concealed. A home builder testified that the absence of gypsum sheathing throughout the house left it exposed to moisture damage. He believed the home was not sellable in its current condition and required between $13,000 and $15,000 in repairs. A former neighbor of the Bryants testified that the house had a history of water problems.

Caldwell testified that she did not know the Bryants before listing their home on July 29, 1994. Caldwell said she was in the home only three times. She testified that she was not trained to do home inspections, that she did not inspect the house, that she was unaware of the defects the Bryants concealed, and that she did not advise the Bryants to paint, use air fresheners, or conceal anything about the condition of the house.

The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. *Klusack v. Ward*, 234 Ga. App. 178, 179 (1) (507 SE2d 1) (1998); OCGA § 51-6-2 (a). In this case, Clark contends that Caldwell knew about the defects in the Bryants' house, that she concealed them, and that she made false representations about the condition of the home that induced her to buy it.

First, neither ReMax nor Caldwell made any written misrepresentations in the form disclosure statement Caldwell provided to Clark. The document plainly stated that the representations it contained were solely those of the seller. Simply relaying this information, without actual knowledge of the alleged falsity, is insufficient to form the basis for a claim of fraud. OCGA § 10-6A-5 (b). Second, Caldwell's oral statements to Clark were not actionable misrepresentations because they were general statements of opinion, some of which did not even pertain to the condition of the house. Not every alleged misrepresentation can serve as the basis for a claim of fraud. Statements of opinion are not factual representations that are actionable as fraud. *Buckner v. Mallett*, 245 Ga. 245, 246 (1) (264

SE2d 182) (1980); *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966-967 (4) (214 SE2d 360) (1975); *Wilkinson v. Walker*, 143 Ga. App. 838-839 (1) (240 SE2d 210) (1977). General commendations about a property, that it is "in good condition" or "a good buy," are considered "puffing" or mere statements of opinion. See *Morris v. Budd*, 226 Ga. App. 455, 456-457 (1) (486 SE2d 682) (1997). To the extent that Caldwell's comments about Mr. Bryant being a good handyman can be construed to mean the home was well maintained, such statements are also a general expression of opinion. *U-Haul &c. v. Dillard Paper Co.*, 169 Ga. App. 280, 281 (312 SE2d 618) (1983). Consequently, because there was no actionable misrepresentation, an action for fraud based upon a misrepresentation must fail. See id.

Also, Clark elected to affirm the real estate sales contract and sue for damages. In doing so, she is "bound by the contract's terms and is subject to any defenses which may be based on the contract." (Citation omitted.) *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 524 (1) (448 SE2d 271) (1994). This contract contained both a merger clause and a disclaimer that specifically stated that the buyers did not rely on the broker's representations pertaining to the structural condition of the property or the operating condition of certain enumerated systems, including the plumbing. Consequently, Clark is estopped from asserting reliance on alleged misrepresentations not contained within the contract. Id.; *Estate of Sam Farkas, Inc. v. Clark*, 238 Ga. App. 115, 118-119 (1) (517 SE2d 826) (1999).

Finally, Clark's claim of fraud based upon an omission of a material fact must fail because there is no evidence that Caldwell had knowledge of the concealed defects. In all cases of fraud involving a concealment of a material fact, scienter, or knowledge of the alleged falsehood, is an essential element of the tort. OCGA § 51-6-2 (b); see, e.g., *Baldwin v. Roberts*, 212 Ga. App. 546, 547 (2) (442 SE2d 272) (1994). In fraudulent concealment actions "the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed." (Citations, punctuation and emphasis omitted.) *Webb v. Rushing*, 194 Ga. App. 732, 733 (1) (391 SE2d 709) (1990). "There must be some evidence of the silent party's actual knowledge that the defect exists at the time of the sale from which his moral guilt in concealing it can be inferred." Id. However, because fraud is inherently subtle, slight circumstances may be sufficient to establish a proper case. OCGA § 23-2-57. As we have held:

> Proof of fraud is seldom if ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and

indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination.

(Citation and punctuation omitted.) *Brown v. Mann*, 237 Ga. App. at 249 (1) (a).

In this case, proof of Caldwell's knowledge rests upon an assumption that because Caldwell said she was "friends" with the Bryants and because she was their listing agent, she must have known of the defects. Assuming that Caldwell was a friend of the Bryants, it does not logically follow that she spent time in their home and thus acquired actual knowledge of the defects. Also, there is no evidence that Caldwell, as the listing agent, spent any more time in the house than Clark or that she necessarily would have discovered the defects during those visits. Further, there is no evidence that Caldwell instructed the Bryants to paint the house or to use air fresheners to conceal the home's defects.

To authorize a verdict, circumstantial evidence must not only support the conclusion for which it is offered, but also render all inconsistent conclusions less probable. *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 780-781 (257 SE2d 186) (1979). Inferences must be based on probabilities rather than mere possibilities. *Cohen v. Hartlage*, 179 Ga. App. 847, 851 (348 SE2d 331) (1986). And, although "fraud may be proved by slight circumstances, it must amount to more than mere speculation." *Clay v. Clay*, 269 Ga. 527 (501 SE2d 208) (1998). In this case, there is no evidence from which the jury could reasonably infer that Caldwell knew about the defects in the Bryants' home. In such a plain and indisputable case, the court should have directed a verdict for ReMax and Caldwell. *Armstrong Transfer &c. Co. v. Mann Constr.*, 217 Ga. App. 538, 540 (1) (458 SE2d 481) (1995).

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED JULY 10, 2000.

*Michael T. Thornton*, for appellants.
*Clifford H. Hardwick*, for appellee.
*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Vicki V. Mott*, amici curiae.