A00A2434. FANN et al. v. MILLS et al.
A00A2435. BARKER et al. v. MILLS et al.
(546 SE2d 853)

RUFFIN, Judge.

After Dominique Mills purchased a house, she learned that it had termite damage and was prone to flooding. Mills then sued the following for fraud and negligent misrepresentation:[1] Barbara Barker — the buyer's agent; Margaret Ann Griffin — the seller's agent; Wayne Fann — the broker for both agents; Wayne Fann, Inc. d/b/a Coldwell Banker-Wayne Fann Real Estate; and Kevin Willis — a workman who did repair work on the house prior to Mills' purchase.[2] The defendants moved for summary judgment, and the trial court denied their motions. In Case No. A00A2434, Fann, Griffin, and Wayne Fann, Inc. appeal, and in Case No. A00A2435, Barker and Willis appeal. As both cases involve the same operative facts, we have consolidated them on appeal. For reasons that follow, we affirm in part and reverse in part.

On motion for summary judgment, the movant must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in favor of the nonmovant, warrant judgment as a matter of law.[3] So viewed, the record establishes that Marguerite Shenton decided to sell her home. In August 1994, she contacted her friend, Griffin, who was a real estate agent with Wayne Fann, Inc., to list the house for sale. On August 15, 1994, Shenton completed a seller's disclosure form in which she noted that, in the past, the property had "drainage or flood problems" and that the city

---

[1] The complaint was filed by both Mills and her husband, Charles Mills. As Mr. Mills was not a party to the contract, however, the trial court dismissed him from the suit, and he is not a party to this appeal.

[2] Mills also sued Donnie Albritton d/b/a Albritton Pest Control Company. As this defendant did not move for summary judgment, he is not a party to this appeal.

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

had installed a drain pipe and culvert to address the problem.

Shortly thereafter, Charles Mills saw that the Shenton home was for sale, and he contacted Barker, another agent for Wayne Fann, Inc., to act as a buyer's agent. Barker showed Charles and Dominique Mills the house, and in the lowest level of the house, the three of them noticed water damage, including loose tiles in the playroom and a water stain across the wall of the laundry room. On a subsequent visit, Charles Mills also noticed a soggy doorjamb.

According to the Millses, Barker posited several theories for the source of the water damage, including a leaky sink and a blocked drain in the laundry room. Barker said that she would discover the source of the water damage. Mills alleges that Barker "came back [and] said that we had nothing to worry about. She had asked Margaret Ann Griffin. There was no water problem. There had never been a water problem in the house."

On August 26, 1994, Dominique Mills signed a contract to purchase the house. The contract provided that Mills was entitled to receive the seller's disclosure form, which Mills indicated she had not received. The contract also provided that the buyer had "the right and responsibility" to have the home inspected within ten days of the agreement date. At Barker's urging, Mills had Steven Newell inspect the home. Newell's report did not contain any findings with regard to termite damage. The report did, however, contain multiple references to water damage, including a reference to "[e]vidence of ongoing water penetration" in the crawl space. Although Charles Mills spoke with Newell, he did not inquire into the origin of the water damage.

Griffin hired Barker's stepson, Willis, to make certain repairs to the house prior to closing. Charles Mills apparently told Barker that he wanted to be present when Willis opened a wall to make repairs in order to see if there was interior wall water damage.[4] Willis, however, claims he never received any such message.

Charles Mills was not present when Willis performed the repair work. Willis testified that he only removed a two- to three-inch section along the bottom of the wall in order to replace a rotten baseboard. According to Charles Mills, after the wall had been repaired, he asked Willis if he had seen any damage, and Willis indicated that, following the repairs, "[e]verything was fine."

Dominique Mills closed on the house on September 20, 1994, and she received a termite report from Albritton Pest Control that showed no termite damage. In late September or early October 1994,

---

[4] Although, in his deposition testimony Charles Mills suggests that he spoke directly with Willis, in his affidavit, he avers that he told Barker that he wanted to be present, and he evidently relied upon her to relay the message.

the basement of the house flooded following a heavy rainfall. At some point, Charles Mills had a portion of the wall removed, and he found "substantial interior wall rotting damage of a longstanding nature" behind the wall that Willis had repaired.

In 1996, Charles Mills was playing in the basement with one of his children, and a ball was thrown through one of the walls. In repairing the wall, the Millses discovered substantial termite damage. The Millses filed a lawsuit[5] and, during the discovery process, learned that two termite reports had been completed at Griffin's request. Although the Albritton Pest Control report showed no damage, the report prepared by Orkin showed evidence of termite activity. Dominique Mills contends that she was not given the Orkin report prior to closing. In August 1998, Dominique Mills filed this action, asserting that the defendants were liable for fraud and negligent misrepresentation.

1. Mills bases her fraud and negligent misrepresentation claims, in part, upon the defendants' failure to inform her of the flooding or misrepresenting the cause of the water damage. However, Mills has no cause of action based upon any flood damage because she is unable to demonstrate justifiable reliance, which is an essential element of both fraud and negligent misrepresentation claims.[6]

In her complaint, Mills contends that the defendants made "statements regarding the source of the visible water . . . with the intent to actively conceal from [her] the true origin, nature and extent of the damages." Mills further alleges that, because of those statements, she was fraudulently induced to enter the contract for the purchase of the house. Upon discovering the alleged fraud, Mills had two choices: (1) she could rescind the contract and sue in tort to recover the purchase price and any additional damages; or (2) she could affirm the contract and sue for fraud.[7] Mills chose to affirm the contract, and, "[i]n doing so, she is bound by the contract's terms and is subject to any defenses which may be based on the contract."[8]

The contract in this case contained a merger clause, specifying that "[t]his Agreement constitutes the sole and entire agreement between the parties hereto. . . . No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto." Accordingly, Mills is estopped from asserting reliance on any statements by any of the defendants regarding the cause

---

[5] Evidently, this prior lawsuit was dismissed.

[6] *Real Estate Intl. v. Buggay*, 220 Ga. App. 449, 451-452 (2), (3) (469 SE2d 242) (1996).

[7] *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 523 (1) (448 SE2d 271) (1994).

[8] (Punctuation omitted.) *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 894 (537 SE2d 138) (2000).

of the water damage to the house.[9]

Mills contends that the merger clause does not bar her claims because any alleged misrepresentations and/or fraudulent statements were made after the contract was signed. We find this contention puzzling. In order to sustain a fraud claim, Mills must establish that the defendants' statements or misrepresentations were made with the intent to induce her to act or refrain from acting.[10] Upon signing the contract, Mills was bound by its terms,[11] which required her to purchase the house. Accordingly, upon signing the contract, Mills' decision had been made, and we fail to see how any subsequent statements could have been made with an intent to induce her to act.

Moreover, assuming Mills could demonstrate that any statement about flooding was made with an intent to induce, she cannot establish justifiable reliance. "The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity."[12] The undisputed evidence shows that Mills could have learned about the flooding problems by simply reading the seller's disclosure statement. Despite the fact that Mills knew about the disclosure letter, she never requested it. Also, Mills hired Newell to inspect the home, and Newell's report confirms the existence of water damage. Nevertheless, Mills never spoke with Newell to discuss either the cause or extent of the damage.

"One may fail to exercise due diligence as a matter of law."[13] Here, Mills clearly had the means to discover the cause of the water damage. In failing to avail herself of those means, she cannot now complain that she was somehow deceived by the defendants.[14] Accordingly, Mills has no claim against any of the defendants for fraud or negligent misrepresentation based upon the flooding of the property or water damage.

As the only viable claim Mills had against Willis was based upon water damage, Willis is entitled to summary judgment.[15] In her complaint, Mills asserts that Willis discovered latent termite damage while repairing the wall and that he conspired with Barker to conceal the damage. However, there simply is no evidence to support this assertion. Willis testified that he removed a two- to three-inch strip

---

[9] Id.

[10] *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 769 (1) (531 SE2d 200) (2000).

[11] See *Johnson v. Sackett*, 256 Ga. 552, 554 (2) (350 SE2d 419) (1986) (seller bound by signature on contract).

[12] (Punctuation omitted.) *A & A Exterminators*, supra at 771.

[13] (Punctuation omitted.) *Buggay*, supra at 451 (2).

[14] Id.

[15] We note that Willis was not a party to the real estate contract, but that privity is not necessarily a requirement of a claim of fraudulent inducement. See *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983).

along the bottom of the laundry room wall, and he unequivocally denied seeing any termite damage in this area. And, although the Orkin report indicates that there were live termites in some wood in the crawl space, the report does not indicate that there was any termite damage to the house itself.[16] Finally, in inspecting the home, Newell did not note any termite damage, and Willis testified that he made only those repairs noted on Newell's inspection report. Accordingly, there is absolutely no evidence from which it can be inferred that Willis saw termite damage, much less that he conspired to conceal it.

"While fraud may be proved by slight circumstances, it must amount to more than mere speculation."[17] As Mills' contention that Willis saw termite damage is based on mere speculation, Willis cannot be held liable on this basis. For the reasons discussed above, any claim predicated on flood damage is not viable, either. Thus, Willis is entitled to summary judgment.

2. To the extent that Mills bases her fraud and negligent misrepresentation claims upon the remaining defendants' failure to provide the second termite letter, the merger clause does not bar such claims. A merger clause such as the one in the present case prevents a party from claiming reliance on a representation not contained in the contract.[18] Accordingly, Mills is barred from asserting any alleged fraud or misrepresentation based on the flood damage because there is nothing in the contract regarding the cause of the flood damage. However, the contract *does* require the seller to supply a wood infestation report, which contains representations regarding termites. Thus, any representations in the report are a part of the contract, and a merger clause would not preclude a party from claiming reliance on such representations.

Mills alleges that the defendants knew of the existence of the unfavorable termite report and fraudulently concealed it. In all cases of fraud involving concealment of a material fact, there must be some evidence that the defendants had actual knowledge of the concealed fact.[19] As fraud is inherently subtle, however, Mills may survive summary judgment if there is slight, circumstantial evidence of such knowledge.[20] "[I]t is peculiarly the province of the jury to pass on these circumstances showing fraud."[21]

Here, the record shows that Griffin, as the seller's agent, took it

---

[16] The report does indicate some moisture damage.

[17] (Punctuation omitted.) *Power v. Ga. Exterminators*, 243 Ga. App. 355, 359 (1) (532 SE2d 475) (2000).

[18] See *ReMax North Atlanta*, supra.

[19] Id.

[20] *Quill v. Newberry*, 238 Ga. App. 184, 189 (1) (b) (518 SE2d 189) (1999).

[21] (Punctuation omitted.) Id.

upon herself to procure a wood infestation report.[22] The record further demonstrates that two wood infestation reports were obtained — the Albritton report, which showed no termite infestation, and the Orkin report, which showed suspected termite activity. According to Griffin, if the agency received a copy of a wood infestation report, the copy would be placed in a file. Evidently, Wayne Fann, Inc. received copies of both reports, as the company provided both reports to Mills during discovery. Griffin testified that documents pertaining to the sale of the house were kept in a master file that was accessible to everyone at Wayne Fann, Inc., including Barker and Fann. Thus, there is some circumstantial evidence from which it can be inferred that one or more of these defendants had actual knowledge of the existence of the Orkin report and chose not to divulge their knowledge to Mills. Accordingly, the trial court did not err in denying the defendants' motions for summary judgment as to this aspect of Mills' fraud and negligent misrepresentation claims.

3. Mills also contends that Griffin, Barker, Fann, Inc., and Fann are liable for violating statutory duties imposed by OCGA §§ 10-6A-5 and 10-6A-7. We note, however, that the defendants did not raise this issue in their motions for summary judgment, and the trial court did not address it in its order. "Where a trial court does not rule on an issue, it remains outside the jurisdiction of this Court and we cannot consider it."[23]

*Judgments affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 6, 2001.

*J. Converse Bright*, for appellants (case no. A00A2434).
*Langdale, Vallotton, Linahan & Wetherington, William P. Langdale III, Willie J. Linahan*, for appellants (case no. A00A2435).
*Cannon & Meyer von Bremen, William E. Cannon, Jr., Walter F. Newsom*, for appellees.

---

[22] Although Griffin had no actual recollection of procuring the termite letter, she acknowledged that she normally would obtain such letter and her name is listed on both termite reports.

[23] (Punctuation omitted.) *Johns v. Ridley*, 245 Ga. App. 710, 716 (6) (537 SE2d 746) (2000).