A04A0346. BIRCOLL et al. v. ROSENTHAL et al.
A04A0347. GARDNER v. FLATTERY et al.

(600 SE2d 388)

PHIPPS, Judge.

Dr. Lawrence Bircoll and his wife, Andrea Jaron, purchased a home from Herman and Selma Rosenthal in March 2000. After moving in, Bircoll and Jaron discovered a number of problems, including an active termite infestation and water intrusion. They sued the Rosenthals; the Rosenthals' real estate agent, Sandra Flattery; and Flattery's brokerage firm, HN Real Estate Group. The complaint alleged fraud, conspiracy to defraud, breach of contract, and breach of the Brokerage Relationships in Real Estate Transactions Act (BRETA).[1] After conducting discovery, Bircoll and Jaron voluntarily dismissed all claims. The defendants then moved for attorney fees and costs under OCGA § 9-15-14 (a) and (b). The trial court granted the motions, ordering Bircoll and Jaron to pay fees and costs to the Rosenthals; and ordering Bircoll and Jaron and their lawyer, William Gardner, to pay fees and costs to Flattery and HN.

In Case No. A04A0346, Bircoll and Jaron appeal both fee awards. In Case No. A04A0347, Gardner appeals the award to Flattery and HN. We consolidate these cases on appeal and affirm both.

Under OCGA § 9-15-14 (a), a trial court *must* award attorney fees and litigation expenses "to any party against whom another party has asserted a claim . . . with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim." In reviewing a fee award under OCGA § 9-15-14 (a), we determine whether the claim in question had some factual merit or presented a justiciable issue of law.[2] We affirm the award if there is any evidence to support it.[3]

Under OCGA § 9-15-14 (b), the trial court *may* award fees and costs if it "finds that an attorney or party brought . . . an action, or any part thereof, that lacked substantial justification. . . . '[L]acked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." We affirm a fee award

---

[1] OCGA § 10-6A-1 et seq.
[2] *Hall v. Hall*, 241 Ga. App. 690, 691 (1) (527 SE2d 288) (1999).
[3] Id.

under this Code section unless the trial court abused its discretion.[4]

The record shows that Jaron first saw the house in November 1999 and called Flattery for an appointment to see it. The house had a synthetic stucco exterior, and Bircoll and Jaron both believed that stucco homes were more likely to attract termites.[5]

At her first viewing of the house, Jaron obtained a Seller's Disclosure Statement, on which Herman Rosenthal had checked boxes indicating that he had knowledge of past or present termite damage to the property and of termite reports or treatment within the past five years. The disclosure statement contained a handwritten notation that the termite problems had been "taken care of by Alexander bond," referring to the Rosenthals' termite retreatment and repair bond with Alexander Termite & Pest Control Company.[6] The disclosure statement also revealed that there had been "problems" with "walkways" and with water in the basement, but that there had been no water in the basement since 1989.

In December 1999, Bircoll and Jaron signed a contract to purchase the house. The contract contained a "Disclaimer" section that provided:

> Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter, including but not limited to . . . any matter which could have been revealed through . . . inspection of the Property; the condition of the Property[;] . . . termites and other wood destroying organisms. . . . Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters[,] and that, if any of these matters or any other matters are of concern to them, they shall seek independent expert advice relative thereto.

The contract also contained the following merger clause: "This Agreement constitutes the sole and entire agreement between the parties

---

[4] *Mitcham v. Blalock*, 268 Ga. 644, 648 (5) (491 SE2d 782) (1997), disapproved on other grounds, *Felix v. State*, 271 Ga. 534, 537 (523 SE2d 1) (1999).

[5] Although Jaron testified that she thought the stucco was genuine or "hardcoat," not artificial, the Official Georgia Wood Infestation Inspection Report included in the closing documents indicated that it was artificial.

[6] In her deposition, Jaron testified that on a later visit to the house, she asked Rosenthal about the termite damage, and he told her that they had had a "small termite problem" around the front door in 1996, but that it "had been taken care of, and . . . they had not had a problem since."

hereto. . . . No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto." Finally, the contract incorporated by reference the seller's disclosure statement that Rosenthal had completed.

The day after the contract was finalized, Rosenthal faxed Flattery a termite treatment history indicating that the home had been treated for termites at least twice, that an active infestation had been found in October 1999, and that conditions existed that might lead to future infestations. It is undisputed that Flattery promptly faxed this history to Bircoll and Jaron's real estate agent, Robin Blass, and also mailed Blass a copy. Whether Blass ever relayed the information to Bircoll and Jaron, however, is disputed.[7]

In late December 1999, Bircoll and Jaron obtained a professional, visual inspection of the property. The inspector's report listed a number of concerns, including possible water intrusion and recent stucco repairs. Bircoll and Jaron did not hire anyone, before closing, to inspect the stucco or look for termites.

In March 2000, in anticipation of closing, the Rosenthals obtained an Official Georgia Wood Infestation Inspection Report from Alexander. The report indicated no active infestations in the home, but showed previous termite infestations and noted that the home contained "[e]arth to wood contact," a "condition[ ] conducive to infestation." The report also stated,

> *If visible evidence of active or previous infestation is reported it should be assumed that some degree of damage is present and a diagram identifying the structure(s) inspected and showing the location of such evidence must be attached to this form.* Evaluation of damage and any corrective action should be performed by a qualified inspector approved by the purchaser and lending agency.[8]

The report contained a diagram of the house showing previous termite infestations in three separate areas.

Jaron signed the report at the closing. She later testified that she did not recall doing so, but she admitted that the signature on the document "absolutely looks like my signature." She also testified that she knew that such a report was required for closing. Jaron recalled seeing the report for the first time, however, when she reviewed her

---

[7] Blass averred that she had tried to fax the history to Jaron, but that Jaron had had trouble reading the faxed copies and had requested clearer ones. Her affidavit does not indicate whether she ever forwarded clearer copies to Jaron. Jaron testified that she never received any copy of the history from Blass.

[8] (Emphasis in original.)

closing documents after discovering problems in the home — but before filing suit. She testified that even if she had reviewed the report at closing, she still would have proceeded with the sale.

After moving into the house, Bircoll and Jaron discovered that the attic was infested with rodents, the basement repeatedly flooded, the roof leaked, and the front stoop had sunken into the ground due to alluvial soil in the area. In the summer of 2001, according to their complaint, they discovered a "massive, active termite infestation and ... extensive termite damage," as well as "numerous problems caused by water intrusion." After beginning expensive repairs on the home, Bircoll and Jaron retained Gardner to represent them. In October 2001, Gardner filed the complaint on their behalf.

Approximately three weeks after the complaint was filed, Monica Gilroy, counsel for Flattery and HN, had a telephone conversation with Gardner. Gilroy averred that Gardner admitted that he had no "direct evidence" of Flattery's liability, and Gardner has not denied making this statement. Gilroy followed up with a letter stating that her clients were not liable based on this court's decision in *ReMax North Atlanta v. Clark*.[9]

In January 2002, Bircoll, Jaron, and Gardner met with Flattery before serving her with the complaint "to hear her side of the story." According to Jaron, Flattery made a number of false statements at the meeting that aroused her suspicions about the extent of Flattery's knowledge of the home's problems. The day after the meeting, Gilroy again wrote to Gardner, asking him to dismiss her clients from the case. Gardner declined to do so.

According to Gardner, he met with Bircoll and Jaron's agent, Blass, and inspected her files before filing suit. Gardner averred that Blass's files did not contain a copy of the termite information that Flattery had sent to her in December 1999, and that Blass denied ever having seen the official termite report. Gardner further averred that after the depositions of Flattery and Herman Rosenthal in April 2002, he learned for the first time that "Flattery had received from Mr. Rosenthal some information concerning termite treatments at the house, and that she had passed the information along to Ms. Blass." Immediately after the Flattery and Rosenthal depositions, according to Gardner, he asked opposing counsel "not to spend any more time or incur any further expense in the case" until he could speak with his clients. And after Gardner talked to Bircoll and Jaron, they "voluntarily dismissed the case."

Shortly after the voluntary dismissals, all defendants moved for the imposition of sanctions. Following a hearing, the trial court held

---

[9] 244 Ga. App. 890, 894 (537 SE2d 138) (2000).

that defendants were entitled to sanctions under both OCGA § 9-15-14 (a) and (b) because all claims lacked substantial justification.

With respect to Flattery, the court found that Bircoll and Jaron had sued her based on nothing more than their unsubstantiated assumptions that she must have known of the home's defects. With respect to HN, the court found that the claims against it were plainly foreclosed by binding decisions of this court. With respect to the Rosenthals, the court found that (1) there was no evidence that they had actual knowledge of any hidden defects in their home; (2) Bircoll and Jaron had not reasonably relied on any alleged fraudulent misrepresentations; (3) there was no evidence of any conspiracy between the parties to commit fraud; and (4) Bircoll and Jaron could not maintain a claim for fraudulent inducement to enter the contract because they had elected to affirm it.

The court ordered Bircoll and Jaron to pay the Rosenthals $22,074.90 and to pay Flattery and HN $18,228.83. It also sua sponte ruled that Gardner was jointly and severally liable, along with his clients, to pay the award to Flattery and HN.

1. *Claims against Flattery and HN*

As the trial court pointed out, binding precedent from this court plainly foreclosed the claims against Flattery and HN.

In *ReMax North Atlanta v. Clark*,[10] decided more than a year before Bircoll and Jaron filed suit, a home buyer sued the sellers' real estate agents for fraudulently misrepresenting the condition of the home and concealing material defects.[11] We reversed a jury award in favor of the buyer because the sellers' agents were not liable for fraud as a matter of law. We held, among other things, that the buyer — having elected to affirm the sales contract and sue for damages — was bound by the terms of the contract.

> This contract contained both a merger clause and a disclaimer that specifically stated that the buyers did not rely on the broker's representations pertaining to the structural condition of the property. . . . Consequently, [the buyer] is estopped from asserting reliance on alleged misrepresentations not contained within the contract. [Cits.][12]

We also held, in the alternative, that there was no evidence that the agents had actual knowledge of any concealed defects. Although

---

[10] Supra.

[11] The buyer also sued the sellers, but those claims were not at issue on appeal.

[12] 244 Ga. App. at 894.

fraud is "inherently subtle" and may be proven by "slight circumstances," the buyer's bald assumption that the agents must have known of the defects was insufficient to establish fraud.[13]

In *Salinas v. Skelton*,[14] decided seven months before Bircoll and Jaron filed suit, a condominium buyer sued the sellers, their agent, and their agent's brokerage firm for fraud after she moved in and found asbestos insulation around an old boiler. Relying on *Clark*, we held that the agent and brokerage firm were entitled to summary judgment:

> [The buyer] does not dispute that she is bound by the merger clause in the purchase agreement, and there is no evidence that [the agent] made any misrepresentations outside the agreement. The Disclosure Statement, by its express terms, was clearly limited to representations made by the seller. Accordingly, the trial court correctly granted summary judgment to [the agent] on [the buyer's] claims against him. Likewise, we find no error in the trial court's grant of summary judgment to [the brokerage firm], whose liability was predicated solely on [the agent's] alleged wrongdoing.[15]

In light of this controlling authority, which Bircoll and Jaron made no attempt to distinguish, they had no basis for believing that their fraud claims against Flattery and HN would succeed. Like the sales contracts in *Clark* and *Salinas*, the contract in this case contained a disclaimer clause stating that Bircoll and Jaron had not relied on any representations by agents. The contract also contained a merger clause stating that no representation or promise not contained in the contract was binding on any party to the contract. Finally, the seller's disclosure statement, incorporated into the contract by reference, expressly stated that it was limited to the representations of the Rosenthals.

Bircoll and Jaron argue that Flattery's misstatements during their meeting with her gave them grounds to believe that she was involved in a cover-up. Gardner argues that he did not realize that the claims against Flattery and HN were groundless until after the depositions of Flattery and Herman Rosenthal, when he learned for the first time that Flattery had disclosed termite information to Blass months before closing. But the relevant inquiry is not what the parties learned or suspected *after* filing suit. We focus, rather, on

---

[13] Id.

[14] 249 Ga. App. 217 (547 SE2d 289) (2001).

[15] (Footnotes omitted.) Id. at 223-224 (4).

whether Bircoll, Jaron, and Gardner could have determined *before* filing suit that the claims against Flattery and HN were groundless. The two critical documents that showed that the claims were, in fact, groundless — the purchase contract and the official termite report — were in the possession of Bircoll and Jaron long before suit was filed. Thus, because Bircoll, Jaron, and Gardner could have discovered "with a minimum amount of diligence"[16] before filing suit that the claims against Flattery and HN lacked a substantial basis, we affirm the award of attorney fees to Flattery and HN.

Bircoll and Jaron also assert that they are immune from sanctions because they were simply relying on Gardner's legal advice. We find no controlling authority for the proposition that reliance on an attorney's advice insulates a party from sanctions under OCGA § 9-15-14.[17] If that were the case, then no party represented by counsel could be liable for sanctions.

2. *Claims against the Rosenthals*

(a) Bircoll and Jaron essentially concede that the merger clause in the sales contract barred any claims based on alleged representations not contained in the contract. They point out, however, that the merger clause does not prevent them from claiming fraud based on representations in the contract itself.[18] They allege that the seller's disclosure statement, incorporated into the contract, contained three actionable representations: (1) it falsely stated that the termite problem had been "taken care of by Alexander bond"; (2) it falsely stated that there had been no water in the basement since 1989; and (3) it failed to identify any structural problem with the front stoop.

(i) First, there is no evidence that Herman Rosenthal knew about any continuing, untreated termite or basement water problems when he filled out the disclosure statement, or that he was aware that the front stoop had sunk. As the trial court pointed out, fraud must be based on *knowing* concealment or misrepresentation of facts.[19]

With respect to the termite problem, Rosenthal testified in his deposition that he had seen live termites in the powder room in 1995 or 1996 and had called Alexander, which "came out and of course corrected the problem." When asked whether Alexander's treatment had cleared up the problem, Rosenthal responded: "Well, for two years after that I didn't have an ant or [anything] come through the house, so I imagine it did." Rosenthal testified, however, that he saw

---

[16] *Stancil v. Gwinnett County*, 259 Ga. 507, 509 (1) (384 SE2d 666) (1989).

[17] *Seckinger v. Holtzendorf*, 200 Ga. App. 604 (409 SE2d 76) (1991), cited by Bircoll and Jaron, is physical precedent only because one judge on the panel concurred only in the judgment. See Court of Appeals Rule 33 (a).

[18] See *Conway v. Romarion*, 252 Ga. App. 528, 532 (2) (557 SE2d 54) (2001).

[19] See, e.g., *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 145 (3) (524 SE2d 790) (1999).

termites around the front door in 1999. He again called Alexander, which again treated the problem, and he noticed no further termite problems after that. Rosenthal was asked whether, when he filled out the disclosure statement, he felt that Alexander's treatments had "alleviated all the termite problems in the house." Rosenthal answered, "Yes, I did."

With respect to water in the basement, Rosenthal testified that there had been seepage on one occasion "probably around '88," that he had "had some people come out" to install a french drain, and that "[t]hat solved the problem. There was no more water."

With respect to the front stoop, Rosenthal did report problems with "walkways" in the disclosure statement, though he provided no details. During his deposition, he testified that the front stoop had "dropped" or "settled" a few inches and that he had "called a company that does that kind of work, and [they] drilled holes and pumped concrete and raised it back up." He testified that he had not been aware that a second stoop had been built over the first one and that the builder must have done that. He also testified that he was not aware of any alluvial soil around the foundation of the house or of any water intrusion near the stoop.

Bircoll and Jaron point to no competent evidence to refute Rosenthal's testimony that he did not know about any ongoing problems with termites, the basement, or the stoop. Thus, there is no evidence that Rosenthal's representations in the disclosure statement were false, or that he failed to disclose a known defect. In affidavits submitted to the trial court, Bircoll and Jaron averred that neighbors had told them that the Rosenthals frequently had water problems, and that contractors had said that based on the extent of the home's problems, the Rosenthals must have been aware of them. The trial court, however, properly granted the defendants' motions to strike these unsworn statements as inadmissible hearsay, and neither Bircoll and Jaron nor Gardner have appealed that ruling.

Gardner argues that the trial court should not have required him to produce affidavits from third parties to show that the Rosenthals must have known about the home's problems. He points out that "the parties never got to the 'expert witness phase' of discovery" before the case was voluntarily dismissed. Even though Gardner was ordered only to pay fees to Flattery and HN, we consider his argument in relation to the Rosenthals' fee award, and we reject it. Bircoll and Jaron could have presented admissible evidence of fraud at the hearing on the motions for sanctions, notwithstanding the status of discovery in the lawsuit.[20] Their reliance, instead, on inadmissible

---

[20] See *Northen v. Mary Anne Frolick & Assoc.*, 236 Ga. App. 7, 11 (1) (510 SE2d 857) (1999)

hearsay contained in their own affidavits justified the trial court's conclusion that their fraud claim lacked a substantial basis.[21]

(ii) Second, we agree with the trial court that Bircoll and Jaron's reliance on any alleged misrepresentations or concealments was not reasonable as a matter of law.[22] Their home inspector raised multiple potential problems, including signs of dampness in the basement even though there had been "no major rains in months." But Bircoll and Jaron apparently did not pursue these issues. And at closing, Jaron signed (though did not read) the official termite report indicating multiple previous termite treatments and the possibility of damage to the home. Finally, Jaron testified that even if the contents of the termite letter had been discussed with her at closing, she still would have gone forward with the transaction. Under these circumstances, Bircoll and Jaron could not claim justifiable reliance,[23] and the absence of that essential element of fraud was apparent before they filed suit.

(b) Bircoll and Jaron also argue that the conspiracy claim was justified because only slight evidence of conspiracy is required to establish the tort. But in the absence of an actionable fraud claim, there could have been no conspiracy to defraud, either.

(c) Bircoll and Jaron assert that the amount of the fee awards was excessive. In their brief, they write: "It was only the revelation that Mr. Rosenthal had provided additional termite information prior to closing that called [our] case into question." Thus, they urge, fees should have been awarded only for legal work performed after the depositions of Flattery and Rosenthal.

But as discussed above, the revelation that Rosenthal had furnished termite information before closing did not doom Bircoll and Jaron's case. Rather, they should have known that their claims had no substantial basis before they filed the complaint. Thus, the trial court was not required to limit the fee award to expenses incurred after the Flattery and Rosenthal depositions.

In sum, applying the standard of review for a fee award under OCGA § 9-15-14 (a) — "any evidence" — or the standard of review for a fee award under OCGA § 9-15-14 (b) — "abuse of discretion" — we

---

(error for trial court to exclude expert testimony offered by party defending motion for sanctions).

[21] See *Brown v. Kinser*, 218 Ga. App. 385, 387 (2) (461 SE2d 564) (1995) (in the absence of any evidence showing factual merit in claim of fraud, trial court erred by not awarding attorney fees).

[22] See generally *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 773-774 (b) (572 SE2d 334) (2002).

[23] See *Klusack v. Ward*, 234 Ga. App. 178, 179-180 (1) (507 SE2d 1) (1998).

conclude that the trial court did not err in awarding attorney fees to Flattery, HN, and the Rosenthals. We therefore affirm both cases.

*Judgments affirmed in Case Nos. A04A0346 and A04A0347. Smith, C. J., and Johnson, P. J., concur.*

DECIDED MAY 17, 2004.

*Charles F. Peebles,* for appellants (case no. A04A0346).

William W. Gardner, *pro se* (case no. A04A0347).

*Monica K. Gilroy, Cohen, Goldstein, Port & Gottlieb, Robert C. Port, McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark,* for appellees.

*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Ned Blumenthal,* amici curiae.