**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2095. CHARLES v. BUTLER et al.

ANDREWS, Presiding Judge.

In this discretionary appeal, Carey R. Charles appeals from an order entered by the Superior Court of Fulton County affirming the final administrative decision of the Board of Review ("Board") of the Department of Labor ("Department"). The Board affirmed an administrative hearing officer's decision that, among other things, found that Charles had underreported his income from a part-time job in 2009 while receiving unemployment benefits and, except with respect to one week, allowed the Department to continue to invoke fraud penalties against Charles upon remand to the benefit control unit. Charles argues on appeal that the superior court erred in affirming the Board's decision because the Department failed to prove fraud at the hearing before the hearing officer and the hearing officer relied on inadmissible

hearsay. He further argues that the trial court erred in failing to strike the supplemental record filed by the Department. We agree that the Department failed to prove fraud within the meaning of OCGA § 34-8-255, and we therefore reverse and remand.

> Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact. When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."

(Citation and punctuation omitted.) *Robinson v. Thurmond*, 309 Ga. App. 883, 884 (711 SE2d 430) (2011).

The record shows that Charles was receiving unemployment benefits when he started working part-time for the YMCA of Metropolitan Atlanta ("YMCA") in May 2009. In or around October 2010, the Department initiated an audit of Charles's 2009 earnings by sending the YMCA a form that it was to complete showing Charles's weekly earnings from the week ending July 4, 2009 through the week ending December 26, 2009. In April 2011, the Department sent Charles a request for information about his reported income for the time period in question, and Charles

2

responded on April 7, 2011. On October 10, 2012, the Department sent Charles a notice stating that he had "knowingly and willfully failed to report and/or incorrectly reported [his] earnings" for 23 weeks from July through December 2009 and that the "total amount overpaid is $7,062.00." The next day, the Department sent two additional notices to Charles stating that because of his "ineligibility" for unemployment benefits described in the October 10, 2012 notice, he also must repay the Federal Additional Compensation ("FAC") he received for the relevant time period.

Charles appealed from the Department's three notices, and following a hearing before an administrative hearing officer, the hearing officer issued a decision affirming the overpayment set forth in the October 10, 2012 notice. Charles then appealed the hearing officer's decision to the Board. Finding merit in Charles's arguments that his due process rights were not properly observed in the hearing and that the hearing officer erred in failing to address the October 11, 2012 notices and did not state whether the fraud penalties were properly applied, the Board remanded the case for a de novo hearing.

A de novo hearing took place before a new hearing officer on February 25, 2013. Although the YMCA received notice of the hearing, no representative from the

3

YMCA attended the hearing. A number of documents were entered into evidence at the beginning of the hearing, including the wage audit completed by the YMCA, which was allowed into evidence over the hearsay objection of Charles's counsel for the limited purpose of showing what the Department used to "build the overpayment."

Jermine Woolery, Supervisor, Benefit Payment Control for the Department, testified that based on the audit completed by the YMCA, the Department determined that Charles underreported his earnings from July 4, 2009 through December 26, 2009. She stated that the underreporting also created an overpayment with respect to Charles's FAC payments.[1] The Department concluded that by underreporting his earnings when he certified for benefits, Charles made misrepresentations of fact to obtain higher benefit payments. Woolery testified that the handbook provided to applicants for unemployment benefits states that claimants must report gross earnings when they certify for benefits. She maintained that the handbook is given out to all applicants and that applicants are required to sign a form acknowledging receipt. Woolery admitted, however, that the Department did not have any proof that Charles

---

[1] Woolery explained that FAC is a supplement of $25 per week the federal government provided from 2009 through 2011.

received the handbook. She tried to locate Charles's acknowledgment of receiving a handbook but was not able to do so. Woolery admitted that Charles's online certifications for benefits, which were admitted into evidence, showed that he had reported some earnings for the weeks ending December 12, 19, and 26, 2009 but that the Department's database used to calculate overpayments did not reflect those reported earnings. She further admitted that the Internet certifications showed that Charles overreported his earnings for the week ending December 19, 2009. Woolery testified that the Department makes a determination as to whether fraud is involved in underreporting based on "how many weeks went by and this person did not go in the office . . . to correct this situation."

Charles testified that he applied for unemployment benefits online at one of the Department's career centers. He could not recall what information he received or if he received a handbook. Charles testified that he certified for his benefits online and that the program did not state whether earnings should be reported as net or gross. He was simply required to enter a number in a box. Charles stated that he was paid every other week, and on the off weeks, he estimated his earnings based on hours worked. On the weeks he was paid, he used his paycheck to make the certification. Charles stated that he usually used the net amount for the certification because he would look

5

at the amount he received in his bank account by direct deposit. Charles was aware that his employer reported income to the Department on a quarterly basis. He testified that he did not really pay attention to the deposits of benefits he received from the Department but usually just looked at his bank account to see if he had enough money to cover his bills.

Following the hearing, the hearing officer issued a somewhat confusing decision in which he found that an overpayment of benefits occurred but set aside and remanded the October 10, 2012 notice to be corrected because of errors with respect to overpayments in the weeks ending December 12, 19, and 26, 2009. The hearing officer ordered that the overpayment for the week ending December 19, 2009 be developed as a non-fraudulent overpayment. He further ruled that "[t]he fraud provision [of the October 10, 2012 notice] shall be set aside. Benefit Payment Control may re-institute the Fraud provision if appropriate . . . once a correct overpayment of benefits is released." The decision affirmed one of the October 11, 2012 notices (for $275) but remanded the other (for $357).

Charles appealed to the Board, arguing that the evidence failed to establish that he knowingly and intentionally failed to properly report his earned income to obtain more benefits than he was allowed. He requested that the Board reverse the hearing

6

officer's decision and remand the case to compute any overpayment based only on his actual overpayments, without penalties. The Board affirmed the hearing officer's decision. Charles filed a petition for judicial review in the superior court,[2] arguing that the Board's decision must be reversed and that any overpayment should be considered without fraud penalties. The superior court issued an order in which it summarily concluded that the evidence supported the Board's decision and that there was no legal error.

1. We note as an initial matter that neither the Department nor the YMCA filed an appellee's brief in this Court. "As a result, we accept [Charles's] statement of facts as prima facie true and decide the case on the basis of this statement and the evidence cited and quoted in support thereof." (Citation and punctuation omitted.) *Thomas v. Butler*, 2015 WL 543050, at *2 (Ga. App. Feb. 11, 2015).

---

[2] OCGA § 34-8-223 states: "Judicial review shall be permitted only after any party claiming to be aggrieved thereby has exhausted his or her administrative remedies." Even if Charles might have had further appeal rights within the Department following the determination of the benefit control unit on remand from the hearing officer, an exhaustion requirement may be excused when, as here, it "would result in a decision on the same issue by the same body." *WMM Properties v. Cobb County*, 255 Ga. 436, 440 (3) (339 SE2d 252) (1986).

2. Charles argues that the superior court erred in failing to conclude that the Department failed to prove that Charles knowingly underreported his income in order to obtain benefits to which he was not entitled. We agree.

We first set forth the relevant statutory framework. Earnings of a claimant for unemployment benefits are taken into account in determining the amount of a benefit payment as follows: "For claims filed on or after July 1, 2002, an otherwise eligible individual shall be paid the weekly benefit amount, less gross earnings in excess of $50.00, payable to the individual applicable to the week for which benefits are claimed." OCGA § 34-8-193 (e) (2). OCGA § 34-8-254 (a) governs the liability of unemployment benefit claimants to repay overpayments from the Department, stating, in relevant part:

> Any person who has received any sum as benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled or while the person was disqualified from receiving benefits shall, in the discretion of the Commissioner [of Labor]: (1) Be liable to have such sums deducted from any future benefits payable to such person under this chapter, . . .; and (2) Be liable to repay the

Commissioner for the Unemployment Compensation Fund a sum equal to the amount so received by such person.[3]

Most pertinent here, OCGA § 34-8-255 states:

> Any person who knowingly makes a false statement or misrepresentation as to a material fact or who knowingly fails to disclose a material fact to obtain or increase benefits under this chapter, either for himself or herself or for any other person, . . . shall, upon an appropriate finding by the Commissioner, cease to be eligible for such benefits and an overpayment of benefits shall be computed without the application of deductible earnings as otherwise provided in Code Section 34-8-193.

A statutory penalty[4] is added to the overpayment and interest accrues at a rate of one percent per month.[5] Id.

---

[3] The Commissioner is authorized to waive repayment of overpayment of benefits except if a person receives the overpayment "because of false representations or willful failure to disclose a material fact." OCGA § 34-8-254 (c).

[4] The statutory penalty was 10 percent at the time of the fraud determination at issue here, but OCGA § 34-8-255 was amended in 2014 to provide for a 15 percent penalty. Ga. L. 2014, p. 739-740, § 9.

[5] Further, a person who commits fraud within the meaning of OCGA § 34-8-255 is rendered ineligible to receive unemployment benefits for the "next four complete calendar quarters immediately following the date of [the fraud] determination." Id.

The Department's evidence that Charles acted with the requisite scienter, i.e., that he knowingly misrepresented his income in order to obtain higher benefit payments, was circumstantial. The Department's witness testified that benefit applicants generally receive a handbook that would instruct them regarding their obligation to report gross as opposed to net earnings when certifying for benefits. She could not provide any direct proof, however, that Charles received the handbook or that he received any specific instruction regarding reporting gross earning, and she did not attempt to show that Charles would have been advised at some stage during the online certification process that gross earnings must be reported. The Department's witness admitted that the Department's fraud determination was based on its assumption that Charles had engaged in fraud within the meaning of OCGA § 34-8-255 because of the number of weeks over which the underreporting occurred. Charles, on the other hand, did not recall what information he received during training and testified that when he certified for his benefits online, he received no notice that gross earnings should be entered into the box where he input his earnings information. He usually reported his net income based on the payments his employer deposited into his checking account. Charles knew that his employer was also reporting his income to the Department.

10

Our Supreme Court has explained:

> When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences, he has not, in this reasonable sense, submitted any evidence for a [trier of fact's] decision, until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion, but also render less probable all inconsistent conclusions.

*Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 780-781 (257 SE2d 186) (1979); see also *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 895 (537 SE2d 138) (2000) (proof of fraud "must amount to more than mere speculation.") (citation and punctuation omitted).

Assuming that the facts proved by the Department warrant an inference that Charles knew he was required to report gross income but deliberately underreported it to obtain higher benefit payments, the Department's evidence fails to render less probable the contrary conclusions suggested by Charles's testimony: that Charles failed to ascertain and understand that he was to report his gross rather than net income and that he did not intend to obtain benefits to which he was not entitled. While the evidence may establish that Charles was less than diligent in ascertaining his income from his employer, monitoring deposits in his bank account, and certifying

11

for his benefits, such conduct is an insufficient basis for imposing fraud penalties pursuant to OCGA § 34-8-255. See *Hicks v. McLain's Bldg. Materials*, 209 Ga. App. 191, 193 (433 SE2d 114) (1993) ("While appellant may have shown sloppy business practices on the part of appellee, she has not presented evidence from which either knowledge of falsity at the time of the alleged misrepresentation or intent to deceive may reasonably be inferred."*)*.

Based on the foregoing, we conclude that the superior court erred in concluding that the facts supported the Board's order affirming the decision of the hearing officer. Because the Department did not establish that Charles knowingly made a false statement or misrepresentation as to a material fact in order to obtain benefits to which he was not entitled, the Board erred in refusing to grant Charles's request that the case be remanded for a determination of the actual amount of overpayment of benefit or FAC payments for which he may be liable pursuant to OCGA § 34-8-254, without application of any of the penalties or consequences resulting from a determination of fraud pursuant under OCGA § 34-8-255. Accordingly, we reverse the superior court's order affirming the Board's final decision and remand this case to the superior court with direction that it remand to the Department for further proceedings consistent with this opinion.

12

3. To the extent that Charles argues on appeal that he should not be liable for any actual overpayments of benefits under OCGA § 34-8-254 due to the Department's alleged reliance on hearsay and failure to adequately prove the existence and amount of overpayment before the hearing officer, we conclude that he waived his claim of error by failing to assert it before the Board. See *Sparks v. Caldwell*, 244 Ga. 530 (261 SE2d 590) (1979); *Moore v. Tanner*, 172 Ga. App. 792, 793 (2) (324 SE2d 772) (1984). Charles stated before the Board that he "specifically dispute[d] any finding of fraud," as opposed to his liability for an actual overpayment. We also note that at the hearing before the hearing officer, Charles's counsel arguably conceded the existence of an overpayment, stating that she had calculated an actual overpayment of $1,889.09. Charles's brief before the Board repeated this calculation of the actual overpayment.

4. In view of our disposition in Division 2, we need not address whether the trial court erred in denying the motion to strike the supplemental record.

*Judgment reversed and case remanded with direction. McFadden and Ray, JJ., concur.*

13